THOMPSON *v.* LOVE.

Opinion delivered July 15, 1895.

PROMISSORY NOTE—PAROL AGREEMENT.—The effect of a negotiable note in the hands of an innocent purchaser for value cannot be varied by proof of a contemporaneous oral agreement between the original parties that it should not be negotiated.

NEGOTIABLE PAPER—BONA FIDE HOLDER.—The *bona fide* character of a holder of negotiable paper can be destroyed only by proof of his participation in a fraudulent transfer of the instrument, or of bad faith on his part in the purchase of it.

Appeal from Yell Circuit Court, Dardanelle District.

JEREMIAH G. WALLACE, Judge.

*Rose, Hemingway & Rose* and *W. D. Jacoway*, for appellant.

1. Parol evidence is not admissible to show that by a parol contemporaneous agreement it was contracted that the note should not be negotiable, for this would be to allow the written contract to be directly contra-dicted by oral testimony. 4 Ark. 154 ; 13 *id.* 125; *Ib.* 593 ; 45 *id.* 178 , 153 U. S. 233 ; 73 Pa. St. 286 ; 15 Ind. 508.

2. Mere knowledge of facts that would raise a sus-picion of the validity of the paper, or gross negligence on the part of the taker at the time of the transfer, is not sufficient to impair the buyer's title. That result can be produced only by bad faith. Tied. Com. Paper, sec. 289; 1 Dan. Neg. Inst. sec. 775 ; 2 Wall. 121 ; 102 U. S. 444 ; 21 Wall. 354 ; 46 Mo. App. 440 ; 52 N. W. 339 ; 31 N. E. 419 ; 27 Oh. St. 374 ; 26 N. E. 979 ; 38 N. W. 901 ; 13 Atl. 336; 7 *id.* 488 ; 12 Pac. 728 ; 84 Am. Dec. 401 ; 23 Fed. Rep. 710.

3. A purchaser of negotiable paper is not bound to make inquiry. In order to defeat his claim as an innocent purchaser, it must be made to appear that he acted in bad faith. 5 B. & A. 909, overruling 2 B. & C. 466 ; 1 Dan. Neg. Inst. secs. 771–775 ; 42 Ark. 24 ; 103 N. C. 191 ; 9 S. E. 283.

*M. L. Davis, L. C. Hall* and *R. C. Bullock* for appellee.

1. The agreement not to transfer the notes was a part of the consideration for their execution. Where the consideration is not set forth in the written evidence of it, parol evidence is admissible. 53 Ark. 4. The evidence shows that the agreement not to transfer the notes was a part of the consideration for the execution of the notes. No rule of law protects a purchaser who wilfully closes his ears to information, or refuses to

make inquiry when circumstances of grave suspicion imperatively demand it. 147 U. S. 70 ; Law Co-op. Ed. Book 37, pp. 78–84. Notice that a note was not to be transferred is sufficient. 1 Dan. Neg. Inst. (4 ed.) par. 795 *a*.

2. There can be no innocent holder of paper issued by a corporation, or transferred by it in violation of law. 32 Ark. 634 ; 41 Am. Rep. 223. Parties dealing with a corporation must take notice of its powers. *Ib.* 224, and cases cited ; 24 Barb. 199 ; 28 Am. Rep. 12 ; 1 Am. & Eng. Corp. Cases, 670 ; 5 L. R. A. 100 ; 46 Oh. St. 44 ; 4 Pet. 152 ; 13 Am. Dec. 100 ; Sand. & H. Dig. sec. 1328, subd. II ; 62 U. S. 441.

3. Giving notes for stock is not authorized by our law. Money or property must be actually received. Art. 12, sec. 8, const. ; 12 Pac. 49.

4. Appellant bought the notes with full knowledge of all the material facts, and was not an innocent holder.

HUGHES, J. The appellant sued the appellee upon a negotiable promissory note, executed by appellee, payable to the order of the Southern Hedge Company for five hundred dollars, "for value received," dated June 17, 1889; which was, by endorsement thereon before maturity, assigned to the appellant for value without recourse.

The appellee in his answer admits the execution of the note, but says that the execution of the same was obtained by the Southern Hedge Company by fraud, misrepresentation and deceit, by Duval, president, and Marriatt, agent of said company, in payment for stock in a certain corporation, commonly known as the Western Arkansas Hedge & Wire Fence Company, whose assets were merely nominal, and whose stock was almost, if not entirely worthless, of which fact said Southern Hedge Company was well aware, and said defendant unaware. The answer charges that the

Southern Hedge Company caused false and misleading reports to be circulated in regard to the value of its stock, and the prospects of the corporation; and made and caused such statements to be made to the defendant; and that it represented that it was the owner of certain patents, which were valuable improvements in the growing and plashing of hedge fences; and that large sums of money could be made in the hedge fence business; and that said Southern Hedge Company had contracted for the planting of about forty miles of hedge fence, which was to be transferred to the said Western Arkansas Hedge. & Wire Fence Company, which alone would nearly bring profit enough on the stock to liquidate the notes given for it; that these representations were made by Duval, president and general manager for said company, and were false, and known by them to be so when made, and that, by means of these representations, the defendant was induced to execute the note sued on in this case. The answer avers that said patents were void for the want of novelty, etc.; that defendant, having no experience in such matters, relied upon these representations made to him; that he offered to rescind as soon as he discovered the fraud, and demanded his note, which the said Southern Hedge Company refused to deliver up, whereby defendant was cheated and defrauded, said stock being utterly worthless. The answer denies that the plaintiff is an innocent holder of said note, and says that he had full knowledge of all the facts and circumstances at the time he bought said note, and that he knew, at the time he purchased the same, that said Southern Hedge Company had agreed, as a part of the consideration for the execution of said note, that it would not negotiate the same.

The cause was submitted to the court sitting as a jury, and it found for the defendant, and gave judgment

in his favor. The appellant moved for a new trial, which was refused, and he excepted and appealed to this court.

On the trial a large amount of evidence was introduced tending to prove the representations by Duval and Marriatt, as set out in the complaint, and that the stock of the Southern Hedge Fence Company was worthless ; but as to the value of this stock the evidence was conflicting.

All the evidence tending in any way to bring home to appellant knowledge of the alleged agreement by the Southern Hedge Fence Company that it would not negotiate the notes given for its stock is the testimony of W. H. Gee, who says : "Before he (plaintiff) bought said notes, he conferred with me, and made special inquiries in regard to the solvency and financial standing of the parties who had executed said notes. I informed him that the notes were good, and that I considered the parties all good for their contracts. I did tell him, however, that the Southern Hedge Company ought not to sell the notes ; that they had agreed not to sell them, and I asked him not to buy any notes given for stock in said company, and said if there was any money in it, I wanted to make it myself."

It does not appear from this testimony that there was any agreement, which was part of the consideration for the execution of the notes, that the Southern Hedge Company would not sell or negotiate them.

The note sued on in this case with the notes of many others was given as part of the purchase price of the patent right of the Southern Hedge Company in twelve counties in Western Arkansas. The appellee was one of the incorporators of the Western Arkansas Hedge & Wire Fence Company of Dardanelle. The business authorized to be transacted by the Southern Hedge Company under its patent was the planting, growing

and plashing of hedges, buying or selling territory rights or patents for the construction of hedges, with the right to buy or sell real estate. This patent right to the Southern Hedge Company was sold and transferred to the incorporators of the local company, in consideration for which these incorporators of the local company individually gave in payment their notes.

We cannot conceive how the doctrine of *ultra vires*, contended for by appellee, has any application in this case. The appellee certainly had the power and the right to execute the negotiable promissory note he gave, and the only question is, did the appellant by the endorsement of it to him, become a *bona fide* holder thereof? If so, he is protected by the law merchant, notwithstanding any fraud of the original payees inducing its execution.

Parol agreement inadmissible to vary note.

In *Burke* v. *Dulaney*, 153 U. S. 233, the Supreme Court of the United States say: "The rule is settled that a negotiable instrument in the hands of an innocent purchaser for value cannot be contradicted to his prejudice by an oral agreement or understanding between the original parties variant from the terms of their written contract."

As to who is *bona fide* holder of negotiable paper.

To protect a holder of a commercial instrument against defenses that do not appear on the face of the instrument, it must be shown that he took it in good faith. "If he is guilty of bad faith, *mala fides*, he cannot claim to be a *bona fide* holder. It is therefore necessary to determine what constitutes such good faith as to make one a *bona fide* holder. The earlier English authorities maintained that *mala fides* in this case, as in any other legal transaction, meant participation in some fraud or other wrong. In a later case, Lord Tenterden so far modified the existing rule as to hold that one is not a *bona fide* holder who took the paper under circumstances which ought to have excited the suspicion of a

prudent and careful man. This ruling was subjected to the universal criticism of both the legal and mercantile world, and the complaint of the merchants and bankers induced the court, under the lead of Lord Denman, C. J., to require proof of gross negligence to take away from one the character of a *bona fide* holder." Tiedeman on Commercial Paper, sec. 289. Lord Tenterden's rule was followed by Chancellor Kent, and is still the rule in some of the states, says Mr. Tiedeman. "But (he says) the great weight of authority in this country, as well as reason, supports the contrary doctrine, that the *bona fide* character of a holder can only be destroyed by proof of his participation in a fraudulent transfer of the instrument." *Id.* and cases cited in note 2 ; *Hamilton* v. *Vought*, 34 N. J. L., 187 ; *Buchanan* v. *Wren*, 30 S. W. 1077.

In our opinion, there is no evidence in this case that the appellant participated in a fraudulent transfer of the note sued on, or of bad faith on his part in the purchase of it, that deprives him of the character of an innocent holder. *Morton* v. *Noble*, 15 Ind. 508; *Heist* v. *Hart*, 73 Pa. St. 286.

In the case last cited it is held that a parol agreement, although made at the time of making negotiable paper, that the payee will not negotiate it, and would renew it, is inadmissible to vary the effect of the paper. 1 Daniel on Negotiable Instruments, secs. 771–775.

Reversed and remanded for a new trial.

Riddick, J., absent and not participating.