## JONES *v.* JACKSON.

### Opinion delivered April 27, 1908.

1. APPEAL—NECESSITY OF BILL OF EXCEPTIONS.—Where the judgment record shows that a demurrer to an answer was sustained, and that exceptions thereto were saved, the question whether the court erred in so ruling is presented, without the necessity of a bill of exceptions. (Page 199.)

2. BILLS AND NOTES—DEFENSE—BAD FAITH OF PURCHASER.—In a suit upon a promissory note by an indorsee thereof, an answer which alleges that the note was procured by fraud, and that plaintiff had knowledge that the maker denied liability and notice of circumstances tending to show fraud in contracting the debt which the note evidenced, before he purchased it, sets up a good defense. (Page 199.)

3. SAME—FRAUD—PARTICIPATION OF PURCHASER.—One who purchases a note with notice that it was procured by fraud is not a *bona fide* purchaser, though he did not participate in its fraudulent procurement. (Page 200.)

Appeal from Sharp Circuit Court; *John W. Meeks*, Judge; reversed.

R. M. Jackson sued Jones & Wilson upon a note executed by them to W. E. Smith and by him assigned to plaintiff. Separate answers were filed by the defendants. They were substantially the same. That of defendant Jones is abstracted by his counsel as follows:

1. That he admitted that on the 8th day of May, 1905, by their promissory note he and his co-defendant promised on or before the first day of February, 1906, to pay to the order of W. E. Smith the sum of five hundred and nineteen dollars and twenty-five cents, but denied that said note was given for value by either of said defendants.

2. He denied that on the 16th day of May, 1905, or at any other time, before maturity of said note or after its maturity, plaintiff, in due course of trade and for value, or for any consideration became the owner of said note by purchase or otherwise from payee, W. E. Smith, and denies that plaintiff is still the owner and holder of said note, as alleged in plaintiff's complaint.

3. He states and alleges the facts to be that said note was obtained by the said W. E. Smith through fraud and false pretense and intimidation, and that it is, and was, without consideration, all of which was well known to said R. M. Jackson before he became the holder and pretended purchaser of said note.

4. That about the 20th day of April, 1905, the said W. E. Smith came to this defendant and represented to him that he was agent for one S. E. McNeil, of Calico Rock, Ark., who had a good, fresh and salable stock of general merchandise for sale, whose storehouse had recently been burned, and that he (Smith) would give this defendant a great bargain in said goods if he would purchase the same. That after repeated efforts the said Smith induced this defendant to go to Calico Rock to buy said goods.

5. That defendant had never had any experience in the mercantile business; knew nothing about goods nor their value; that when they reached said town of Calico Rock they found the said S. E. McNeil in charge of a stock of goods piled up stairs in an old store house, some in boxes and some piled around on the floor; that the place where the goods were was poorly lighted, and what goods were shown this defendant in daylight were the

best goods and the clothing, jewelry, trimmings, and the goods
that were damaged and old were shown him after night by very
poor lights; that he was unable to detect by what little oppor-
tunity he had, the defects in said goods; that the said W. E.
Smith and the said S. E. McNeil told defendant, which he was
let to believe, that said goods were all new goods and salable.

7. That said Smith represented to this defendant that he
would sell and was selling said goods to defendant at a discount
of twenty-five per cent. from the first cost price; that
Smith and McNeil never showed defendant any invoice bills
of said goods, and in listing the same he was compelled to take
their word for the wholesale price, when in truth and in fact
the said goods had been marked up on an average of twenty-five
per cent. more than original costs; and some of said goods must
have been fifteen years old. That the invoice as taken by said
Smith and McNeil showed said goods to be worth, as they
represented, something over $2,000.

8. That, after deducting twenty-five per cent. and throw-
ing out a few things, the sum amounted to the sum of $1,586.25.
That while there at Calico Rock this plaintiff was induced to
execute two certain promissory notes to the said S. E. McNeil,
one dated April 28, 1905, for $400.00, payable sixty days after
date, before but few of said goods had been invoiced; and to
secure the payment of said note this defendant was induced to
give a mortgage to said S. E. McNeil on certain personal prop-
erty. That on the next day the said Smith and McNeil, by
fraud and false pretense, which they never fullfilled, viz.: "That
all of said goods were new and not damaged in any way, and
that they, Smith and McNeil, would give defendant all the time
he wanted when he should reach home with the goods, to exam-
ine them fully, and that if any defects were found or any goods
damaged they would make them good by deducting the value
of the damaged goods from the amount, and place credits on
said notes for the same; and further they threatened to foreclose
the mortgage he had given to secure the $400.00 and sell his
personal property, unless he went forward with the deal and
give the note $667.00 note. That they failed and refused to
make good the damaged goods and to give him credit for same
upon said notes."

That, in addition to the fraud and false pretense and coercion, as above stated, in securing the first and second notes above described at Calico Rock, when the defendant and the said Smith reached Hardy with said goods, said Smith, in order to get defendant to execute the note sued on, and obtain a security thereon, proposed to defendant and promised him that he might take all the time he wanted to examine said goods when he should open them up, and, if they were not good fresh goods as represented to defendant at Calico Rock by said McNeil and Smith, that he need not pay said note, but threatened said defendant that if he refused to give said note he, Smith, would attach said goods at the depot, and that this defendant would have to pay the other notes theretofore given. That the said Smith further agreed and promised this defendant that he would leave the note sued on with Walker Clayton or any other man in Hardy until defendant should haul the goods out and open them up, and if they did not prove to be as good as represented that the said Smith was not to have the possession of said note, and same was not to be delivered to him until all defects and damages should be made good.

That, after he had executed said note, the said Smith refused to allow the said Walker Clayton or any one else to hold said note as per agreement.

That, in addition to said goods being old and moth-eaten, rotten and musty, there were a great many coats without vests; that in the few coats shown defendant by the said Smith and McNeil at Calico Rock there were vests to match, but when defendant opened up said clothing he found there were only four coats and vests, and 78 coats had no vests at all, which defect damaged the same more than one-half. That there were 36 pairs of shoes that did not mate, and are absolutely worthless; that the notions and jewelry were old and valueless. That immediately, viz., on the 11th day of May, 1905, after examination, and discovering the fraud as above set out, he went to the said Smith, and notified him of same, and demanded that he (defendant) be made whole as promised and agreed by said Smith. That the said Smith failed and refused to make good the damage on said goods as he had promised to do, and failed and refused to give him credit on the said notes therefor. That

this defendant then and there notified said Smith that he would not pay said note now sued on by plaintiff, and demanded that Smith return the same to him, and offered then and there on the 11th day of May, 1905, to return to said Smith and Mc-Neil all of said goods and demanded a surrender of said note. That said defendant proposed to return the goods to them at Hardy or any other point they might want them shipped to. That on the 16th day of May, 1905, and before the said R. M. Jackson had pretended to trade for said note, in the town of Hardy, in the presence of his co-defendant J. A. Wilson, this defendant informed the said plaintiff, R. M. Jackson, that the said note was fraudulently obtained and was without consideration and warned him not to buy or trade for same, and all the circumstances and fraud practiced on him by the said Smith and McNeil in obtaining said note and that he would not pay it. That immediately after the commencement of this suit this defendant proposed and offered to plaintiff, by his attorney, at the store house of said R. M. Jackson, in the town of Hardy, to turn over to him the said goods as set out in the invoice filed herewith, if he would return to him the note sued on; that on the next day by certain promises and fraudulent representations, this defendant was induced to execute another note to said McNeil, payable November 15, 1906, in the sum of $667.00, and the remainder on said goods, the sum of $519.25, the note sued on, he was induced by the said Smith and McNeil to execute to said Smith and to obtain a security on the same, which he did in the person of J. A. Wilson his co-defendant.

9. That, after the said Smith and McNeil had induced defendant to execute the first note and mortgage in the sum of $400, they refused to make good any of the defects they promised to do, and when the goods had reached the depot at Hardy the said Smith threatened to attach same for balance $519.25, and not allow said defendant to haul same out until this said note was executed and delivered to said Smith.

10. That in the purchase of said goods the said Smith guarantied said goods to be good merchantable goods and free from incumbrance, and, relying upon what he and the said S. E. McNeil said and promised to do, this defendant was fraudulently deceived and induced to execute said note, when in truth

and in fact said goods, with few exceptions, were old and moth-eaten—being an old stock of goods owned by J. A. Schenck & Son of Hardy, Ark., which had recently been removed from Hardy to Calico Rock. That in truth and in fact the said goods did not belong to the said McNeil at all, but were, at the time of the sale, the property of said Schenck & Son, and the said McNeil had no interest in them, that the notes given to said McNeil were immediately assigned by said McNeil to said Schenck & Son, as well as the mortgage given by this defendant, which notes and mortgage have been paid by this defendant with interest thereon of about $1,200.

11.   This defendant, further answering, states that at the time this defendant was induced to purchase said goods and execute said notes he was assured by said Smith that said goods were free from incumbrance of every kind, when in truth and in fact said goods had been mortgaged by said J. A. Schenck & Son to Edward-Stanwood Shoe Co., of Chicago, Ill., for the sum of $406.90, which mortgage was dated April 18, 1905, and not satisfied.

12.   That said goods were old, worn, moth-eaten and worthless, which fact was not known to this defendant until he had hauled the goods out from Hardy and opened them up and undertook to put them in his store house for sale. He then discovered the enormity of the fraud perpetrated upon him, and how the goods, instead of being sold to him at a discount, had been sold much higher than fresh goods were worth in the market. That, immediately on discovering said fraud, this defendant notified the said W. E. Smith of the same, and that he would not pay to the said Smith the sum of this said note sued on by the said plaintiff.

13.   That defendant also informed the said plaintiff, R. M. Jackson, that the said Smith had perpetrated a fraud on him in obtaining said note in the sale of said goods; and again, before said plaintiff traded or pretended to trade for said note, this defendant told him, the said R. M. Jackson, that he would not pay it, for him not to trade for it, and that his co-defendant, also so advised said plaintiff.

14.   Defendant further states that he has on hand about $959.00 worth of said goods, according to the invoice of said

goods, consisting of clothing, shoes, etc., which he has heretofore offered and still offers to turn over to said R. M. Jackson or W. E. Smith in satisfaction of said note sued on. That he has long since paid the other notes, a large amount of which went to satisfy the mortgage which was on the goods, given by the said J. A. Schenck & Son.

A demurrer to each paragraph of the separate answers was sustained, and thereupon defendants filed an answer, which was substituted for paragraph 2 above set out, and is substantially as follows:

Defendants admit that W. E. Smith assigned the note in blank by indorsing his name thereon, but denies that plaintiff in due course and before maturity became the owner of the note, that the assignment was made for value, or that plaintiff is the owner thereof.

Plaintiff's testimony tended to prove that he purchased the note in good faith and for a valuable consideration before its maturity.

The cause was tried before the court, a jury being waived, and judgment was for plaintiff. Defendant has appealed.

*David L. King,* for appellant.

The answer sufficiently states a defense in setting out that plaintiff had knowledge before purchasing that appellants denied liability because of the fraud, false pretenses and intimidation practiced upon them by the vendors of the goods. I Daniel, Neg. Inst. 718; *Id.* 740; Edwards on Bills and Prom. Notes, 516; 2 Randolph, Com. Paper, § 986; *Id.* 1019; 33 Ark. 69; 3 Ohio, 92; 23 Ark. 258; 58 Ark. 446; 50 Ark. 314; 30 Ark. 417; 12 Ark. 218; 49 Ark. 20; 50 Ark. 447; 55 Ark. 582; 14 Ark. 69.

*Sam H. Davidson,* for appellee.

1. Appellant's statements in his answer that he informed appellee that the note was fraudulently obtained was without consideration, etc., were mere conclusions, and constituted no defense. Appellee could not be affected unless it was shown that he had actual knowledge of a defense before he purchased the note, and such defense should have been distinctly pleaded,

together with an allegation of knowledge on the part of plaintiff. As between Smith and appellant, the doctrine of *caveat emptor* applies. 8 Am. & Eng. Enc. of L., 795; 124 Mass. 431; 31 Ark. 170; 8 Am. & Eng. Enc. of L., (1 Ed.), 795 and note 6. There is no allegation that appellant could not examine all the goods by daylight, or have waited until the next day, or have had a better and sufficient light. From all that appears by the allegations of the answer, their true condition could have been ascertained by the use of ordinary diligence. Appellant would have had no remedy against Smith and McNeil. 31 Ark. 170; 102 Mass. 220; Benjamin on Sales, 4 Am. Ed. § 430.

2. There is nothing presented by the purported bill of exceptions. A certificate at the end of a bill of exceptions which states: "And now on this 28th day of February, 1907, is presented this bill of exceptions, which is signed and sealed and appeal allowed and certified by the court," is not an authentication of the truth of the matters contained therein, nor does it present such matters for the consideration of the court. 51 Ark. 278; 81 Ark. 65; 79 Ga. 558; 78 Ga. 356; 3 Enc. of Pl. & Pr. 458; 35 Ark. 386; *Id.* 395; 58 Ark. 110.

HILL, C. J. Thos. W. Jones as principal, and J. A. Wilson as surety, executed a note for $519.25 to W. E. Smith. Smith assigned the note to R. M. Jackson, who sued Jones and Wilson upon it. Jones and Wilson filed separate answers, which were substantially the same. The substance of the answers will be set out by the Reporter in the statement of facts, and it will be seen therefrom that the defense was based upon the alleged fraudulent sale of a stock of goods by Smith to Jones, and that Jackson was not an innocent purchaser of the note and had knowledge of the fraud perpetrated upon Jones by Smith. The court sustained motions to make the complaint more specific and certain; and after amendments sustained demurrers to all of the answers except a substitute for paragraph 2, which admitted the assignment of the note from Smith to Jackson and denied that the date it was assigned was the date shown on the note, and alleged that it was not made before maturity, and that Jackson did not become the owner in due

course of trade, and denied that the assignment was made for value, and denied that Jackson was the owner.

That was the only defense left to Jones. Judgment was obtained on the note, and Jones and his surety appealed.

It is insisted that the bill of exceptions does not show that it was filed within the time allowed for it to be made a part of the record. This is true; but the court finds it unnecessary to consider the bill of exceptions, for the record shows the sustaining of the demurrers to the answer and the exceptions thereto, which were properly preserved; and such record presents a question for review, without the need of a bill of exceptions. *Bush* v. *Prescott & N. W. Ry. Co.,* 76 Ark. 497.

The answers set forth evidentiary matters that are not proper in pleading, and they cannot be commended as examples of good Code pleading; but, when taken as a whole, they sufficiently charge fraud in the sale of the goods to make a good defense between the vendor and vendee, under the principles which were reviewed and announced in *Mason* v. *Thornton,* 74 Ark. 46. It seems that the lower court sustained the demurrers because the allegations were not sufficient to connect the fraud in the sale with the holder of the note.

The allegations, in substance, charge that Jackson had notice of the fraud, false pretense and intimidation perpetrated upon the defendant by Smith, and that Jackson was informed that the note was fraudulently obtained and was without consideration, and was warned not to buy or trade for the same, and of all the circumstances and fraud practiced on Smith in obtaining said note, and also that Smith would not pay it. Counsel for appellee argues that these allegations do not present a defense, because they do not allege that the holder of the note participated in the acts complained of or in the fraudulent transfer of the instrument, or bad faith on his part in the purchase of it; and relied upon *Thompson* v. *Love,* 61 Ark. 81, to sustain him. That was a suit upon a note given to a hedge fence company. Its execution was admitted, and the defense made that it was fraudulently procured, and the holder was not a *bona fide* purchaser. There was evidence to sustain the allegation of fraud in the procurement of the note. The case turned on whether the purchaser was a *bona fide* purchaser. The only

evidence bringing notice home to him was information which he received to the effect that the makers of this and other similar notes were solvent and good for their contracts, but that the payee of these notes had agreed not to sell them. The court, following *Burke* v. *Dulaney,* 153 U. S. 233, correctly decided that this was insufficient to make the purchaser a *mala fide* holder. The court has had occasion recently to re-examine the principles of *Burke* v. *Dulaney,* and has again approved them, in *Graham* v. *Remmel,* 76 Ark. 140.

It is unquestionably true that mere notice of a promise not to negotiate a note does not prevent a purchaser for value in due course of trade from being a *bona fide* purchaser, for he must have knowledge, not of some oral contemporaneous promise, which is inadmissible in evidence, but of something wrong with the paper itself. This notice, actual or constructive, must be that there is some fraud or equity or illegality affecting the original parties. Tiedeman on Commercial Paper, § 300; 1 Daniel on Negotiable Instruments, § 799, (5th Ed.); *Old National Bank of Ft. Wayne* v. *Marcy,* 79 Ark. 149.

Following the excerpt from *Burke* v. *Dulaney,* the court, in *Thompson* v. *Love,* then made a quotation from Tiedeman on Com. Paper, § 289, concluding as follows: "But the great weight of authority in this country, as well as reason, supports the contrary doctrine, that the *bona fide* character of a holder can only be destroyed by proof of his participation in a fraudulent transfer of the instrument." This quotation is from the discussion as to what constitutes *bona fides* in a purchaser. There was a conflict, or rather a progress, in the English decisions on the subject. One rule was laid down by Lord Kenyon, subsequently overruled by Lord Chief Justice Abbott (Lord Tenterden), and this was in turn modified and finally overruled by Lord Denman, when he was Chief Justice, and the rule as first announced by Lord Kenyon amplified and established. Chancellor Kent, when he wrote his commentaries, stated the law as it then existed, following the cases then prevailing in England, but which were afterwards overruled, and his text has been followed by some of the courts, but in most instances overruled later, making the rules substantially the same on both sides of the water. This subject is treated more

fully in 1 Daniel on Negotiable Instruments, (5th Ed.), § §
770, 776. It was reviewed and explained in *Murray* v. *Lard-
ner,* 2 Wall. 110, which case has been followed very generally
by State as well as Federal courts. See the notes to it in 6
Rose's Notes, 388, 394. The discussion was as to what should
constitute *mala fides,* negligence, gross negligence, suspicious
circumstances, or participation in the original fraud or frau-
dulent transfer, etc. The discussion was not as to the notice
which was necessary to bring home to the party sought to be
charged knowledge of fraud. That matter is considered in an-
other section of Tiedeman on Com. Paper (§ 300), and con-
cludes as follows: "Finally it is not necessary that the pur-
chaser should have notice of the particular defense or defect,
in order to be charged with constructive notice. It is sufficient
if he has a general notice that there is something wrong with
the paper. But if he makes inquiry *bona fide* and to the extent
of his ability, without substantiating the general notice of de-
feet, he can claim the protection of a *bona fide* holder."

Mr. Daniel says: "It is quite clear and well settled that
the purchaser need not have notice of the particular fraud or
equity or illegality, in order to be affected by it. It is sufficient
that there be notice, actual or constructive, that there is some
fraud or equity or illegality affecting the original parties.     *     *
* So if he knows the maker denies his liability or refuses to
acknowledge it." 1 Daniel on Neg. Inst. (5th Ed.), § 799.
The foregoing statement of the principles was adopted by this
court recently in the case of *Old Nat. Bank of Ft. Wayne* v.
*Marcy,* 79 Ark. 149.

The statement from Tiedeman's text, quoted in *Thompson*
v. *Love,* when detached from the statement that notice of some-
thing wrong with the paper is sufficient to charge the purchaser
with notice, is misleading, but, when considered in connection
with it, is correct. It was error for the court to sustain these
demurrers, for the answers alleged that the purchaser had knowl-
edge that the makers denied liability and of circumstances tend-
ing to show fraud in the contraction of the debt which the note
evidenced, before he purchased the paper for value before its
maturity. These facts, if proved, would make him a *mala fide,*
and not a *bona fide,* purchaser.

Reversed and remanded.