## HOGG v. THURMAN.

### Opinion delivered March 29, 1909.

1. PATENTS—BOOKS ARE NOT.—Books and the right to sell books are not patents or patent rights, within Kirby's Digest, § § 513, 514, requiring the notes given therefor to be in certain form showing on their face for what they were given. (Page 95.)

2. BILLS AND NOTES—BONA FIDE HOLDER.—Before one can become a *bona fide* holder of a negotiable instrument, he must take it (1) *bona fide,* (2) for valuable consideration, (3) in the usual course of business, (4) before maturity, and (5) without notice at the time of transfer, or before he pays for the instrument, of any existing defense thereto. (Page 97.)

3. SAME—CONSIDERATION.—Before one can claim to be a *bona fide* purchaser of a negotiable instrument, which was executed for no consideration or for an illegal or fraudulent one, he must show that he paid something more than a nominal consideration for its transfer; but any substantial consideration is sufficient. (Page 97.)

4. SAME—INNOCENT PURCHASER—QUESTION FOR JURY.—Where a negotiable instrument was procured from the maker by fraud or without consideration, and was purchased from the payee for a grossly inade-

quate consideration, it is a question for the jury whether the purchaser acquired title in good faith and without notice. (Page 99.)

5. APPEAL—REVERSAL—EFFECT ON ANCILLARY ATTACHMENT.—Where there was evidence to sustain an ancillary attachment, but the cause is reversed to determine whether defendants are indebted to plaintiffs, the ancillary proceedings in attachment will also be reversed with instructions to sustain the attachment only in the event that a judgment is obtained by the plaintiffs in the principal suit. (Page 99.)

Appeal from Union Circuit Court; *George W. Hays,* Judge; reversed.

*Marsh & Flenniken, Thornton & Thornton,* and *Warren, Hamiter & Smith,* for appellants.

1. If the notes were purchased for a merely nominal sum, appellees were not innocent purchasers. 1 Daniel, Neg. Instruments, § 777; 79 Ark. 152.

2. Appellants offered to prove that Harman, with whom the trade was made, told them at the time that the thing they were buying was a patented article, to introduce the contract on the faith of which they executed the notes, and also the title page of the book for the purpose of showing that it was a patented instrument. All this was competent, and should have been admitted. Kirby's Dig., §§ 512, 513; 67 Ark. 575.

FRAUENTHAL, J. The appellees, who were the plaintiffs below, instituted this suit against the defendants upon two promissory notes. They alleged that they had purchased said notes in the ordinary course of business before maturity and for a valuable consideration, and were *bona fide* holders thereof. The notes were dated April 8, 1907, and were due, respectively, six and eight months after date, and each was for the sum of $150.

The defendants denied that the plaintiffs were the owners of the notes, or that same were transferred to them before maturity. They alleged that the notes were executed for the right to sell certain patented articles, and were not executed on a printed form in manner prescribed by the statute; that the consideration for which the notes had been executed had entirely failed; that the original payee had executed to defendants a bill of sale for the right to sell such patented article and agreed to deliver to defendants 120 copies of said articles; and they alleged that the said original payee of said notes failed to deliver any of

said articles, and that there was an entire failure of the consideration of said notes.

At the time of the institution of the suit the plaintiffs sued out a writ of attachment against defendants upon the ground that defendants were about to sell, convey and otherwise dispose of their property with the fraudulent intent to cheat, hinder and delay their creditors. And the defendants in proper manner denied these allegations for attachment.

Upon a trial of the cause, the court instructed the jury peremptorily to return a verdict in favor of the plaintiffs for the amount of the notes. The attachment branch of the case was submitted to the court sitting as a jury, and the attachment was sustained. Thereupon judgment was rendered in favor of plaintiffs for the amount of said notes and sustaining the attachment, and from this judgment the defendants now prosecute this appeal.

On April 8, 1907, the defendants executed to one M. F. Brown the two notes sued on, and these notes were negotiable instruments. On June 7, 1907, and before the maturity of the notes, the payee transferred the notes to plaintiffs without recourse; and plaintiffs testified that they were transferred to them for a valuable consideration, but named no amount.

Upon the trial of the case below, the defendants offered to prove the consideration for which the notes were executed, and, by testimony duly presented, offered to prove that the sole consideration of the execution of said notes was a certain written contract given by M. F. Brown, the payee of the notes, granting to defendants the right to sell certain books or articles in White County, Arkansas, and also that said Brown was to deliver them 120 books, which were to be used in effecting the sale of such books in the territory covered by the right, and the books were also to be sold by them; that these books had never been delivered, and that they had not been able to proceed with the work in the territory on that account; that no books had ever been shipped to them, and that defendants had not received any consideration for the execution of the notes. In substance, the defendants offered to prove by evidence that there was no consideration for the notes, and that the original payee had fraudulently obtained from them the execution of the notes.

The court refused to permit the introduction of any evidence tending to prove the above alleged facts.

In the trial of the cause, one of the plaintiffs was a witness on his own behalf and testified that the plaintiffs bought the notes in June, 1907, but in his direct examination he was not asked and did not state what consideration was paid by them for the notes. Upon his cross examination he was asked the following:

"Q. You got this note at a reduced price? A. Yes, sir. Q. What did you give for it?" To which plaintiffs objected, which objection was by the court sustained. To which ruling of the court the defendants at the time saved their exceptions. "Q. Didn't you buy these notes for a mere nominal sum?" To which the plaintiffs objected, which objection was by the court sustained. To which ruling of the court the defendants saved their exceptions. "Q. Isn't it a fact that this man had tried all over the neighborhood to sell these same notes and had failed? A. I don't know whether he did or not. I heard it. That was only hearsay. Q. How far do you live from these defendants? A. About a mile. Q. Have you ever notified them that you held these notes? A. Not before they became due."

The lower court refused to permit the introduction of the above testimony, presumably on the ground that the plaintiffs were *bona fide* and innocent purchasers and holders of the negotiable promissory notes, and on that account the defendants could not make a defense of want or failure of consideration, and could not, as against plaintiffs, present any fraud or equities which they might set up as against the original payee, and could not inquire into the amount of the price paid by plaintiffs for the notes. The defendants contend that the original payee of the note was a vendor of a patented article or a patent right, and that the notes were not executed in conformity with section 513 of Kirby's Digest, and on that account plaintiffs could not be considered innocent holders of the notes, even though they had given value therefor before maturity.

But the testimony offered by the defendants would not show that the consideration of the notes was a patented article or a patent right. The consideration of the notes which they attempted to prove was a contract for the right to sell books in a certain territory and 120 books. Now, the subject-matter which is patentable consists of any new and useful art, machine, manufacture, or composition of matter, or any new and useful improve-

ment thereof, or any new, original and ornamental design of any article of manufacture. The art that is patentable is a process or act performed upon the subject-matter to be transformed and reduced to a different state or thing. U. S. Rev. St. (1878) § 4886; 30 Cyc. 820. And so books and the right to sell books are not patents or patented rights, within the provisions of sections 513 and 514 of Kirby's Digest, which require the note given therefor to be in certain form with certain statements to be shown on the face thereof.

The question involved in this case, then, is whether the court committed error in refusing to permit the introduction of the above testimony tending to show that the plaintiff had obtained the notes for a mere nominal consideration, and that the original payee had secured the execution of the notes by fraud and without consideration. It is contended by appellees that said testimony is inadmissible for the reason that they are *bona fide* holders of the notes, which are negotiable instruments. A *bona fide* holder takes negotiable paper free from all equitable defenses, that is, all those defenses that do not appear on the face of the paper and by which the paper is not declared invalid by statute. But, before one can become a *bona fide* holder of a negotiable instrument, he must take it (1) *bona fide,* (2) for a valuable consideration, (3) in the usual course of business, (4) before maturity and (5) without notice of any existing defense and of dishonor thereof. If the purchaser can be charged with notice of the defense or defect of title, he is not a *bona fide* holder of the instrument; such notice, of course, must exist at the time the paper is transferred to him or before he paid for it. Tiedeman on Commercial Paper, § § 279-299; 1 Daniel on Negotiable Instruments, § § 769a-789; *Old National Bank of Ft. Wayne* v. *Marcy,* 79 Ark. 149; *Jones* v. *Jackson,* 86 Ark. 191.

This notice of a defense to the note or of its infirmity affects the good faith of the purchaser, and deprives him of the vantage ground and security of an innocent purchaser. *Thompson* v. *Love,* 61 Ark. 81. Ordinarily, the amount of the price that is paid by the purchaser for the paper does not concern the maker; but it may have a bearing on the question of actual or constructive notice of the infirmity of the paper. In order that one may claim to be a *bona fide* holder of a negotiable instrument, it must ap-

pear that he has paid a valuable consideration for its transfer to
him. Any substantial consideration is sufficient. But, before he
can claim to be an innocent purchaser for value and without no-
tice, the consideration must be more than simply a nominal con-
sideration for its transfer. "The inadequacy of the price for the
transfer of the paper may be so gross as to justify the conclusion
that the purchaser is charged with notice of a fraudulent or de-
fective title on the part of the vendor." Tiedeman on Commercial
Paper, § 291. And in the same connection this author says:
"It is certain that a purely nominal consideration would not make
the purchaser a holder for value."

In the case of *DeWitt* v. *Perkins,* 22 Wis. 473, the plaintiff
purchased a note for $300, paying only $5 therefor, and at the
time considered the maker solvent; and in that case it was held
that this merely nominal price charged him with notice of defect
in the note. *Lay* v. *Wissman,* 36 Ia. 305; 1 Daniel on Negotiable
Instruments, § § 777, 777a (5th Ed.). So that the principle is
well established that, if the maker proves there was fraud or ille-
gality in the inception of the instrument and a total want of con-
sideration therefor, then the maker would be entitled to show the
grossly inadequate price paid by the purchaser for the note as
a circumstance which would create a presumption that he knew
the facts that would impeach its validity. *Commissioners* v. *Clark,*
94 U. S. 278, 285; *Collins* v. *Gilbert,* 94 U. S. 753, 761; *Henry* v.
*Sneed,* 99 Mo. 407.

The difficult question to determine is, when is the price paid
for the negotiable instrument so grossly inadequate as to charge
the purchaser with notice? In 1 Daniel on Negotiable Instru-
ments (5th Ed.) § 779, it is said: "In general terms, it may be
said that the consideration should be so utterly trifling as to bear
upon its face the impress of fraud to leave open no reasonable
conjecture but that the purchaser must have known, from the
very nature of the facts, that they could not have originated
from any but a corrupt source. . . . If the amount paid for
the paper were not so insignificant as *per se* to charge the trans-
feree with notice, it might still be so inadequate as to be a preg-
nant fact to be given due consideration, in connection with
others, in determining whether he should be so chargeable or
not."

Where there has been a substantial price paid by the purchaser for a negotiable instrument, and he is in other regards a *bona fide* holder thereof, then the matters relating to the original consideration and transaction between the maker and original payee cannot be inquired into, unless such instrument is declared invalid by statute. But where such price paid for the instrument or note was grossly inadequate as above defined, and the instrument or note was obtained by the original payee by fraud or a total want of consideration, then it becomes a question to be determined by the jury as to whether the alleged purchaser of the note obtained it in good faith and without notice. I Daniel on Negotiable Instruments (5th Ed.) § § 818, 819.

In this case the defendants contended and offered to prove that the notes herein sued on were obtained through the fraudulent promises and representations of the original payee and without consideration. The defendants further endeavored to show, by asking the plaintiff himself, that only a nominal sum was paid by plaintiffs for the notes. This testimony was competent. We are therefore of the opinion that the lower court erred in refusing to permit the defendants to prove the amount of the consideration paid by the plaintiffs for the notes; and if that amount was grossly inadequate, the court erred in refusing to permit the defendants to prove that the notes were obtained by the original payee by fraud and without consideration.

We have examined the evidence relative to the issues raised by the suing out of the attachment, and we are of the opinion that there is sufficient evidence to justify the finding of the court in sustaining said attachment. *Sherrill* v. *Bench,* 37 Ark. 560; *Hanks* v. *Andrews,* 53 Ark. 327; 4 Cyc. 419. But, inasmuch as this cause must be reversed and remanded for a new trial upon the original cause of action involving the indebtedness, the ancillary proceeding of the attachment must also be remanded with it, with instructions to sustain the attachment in the event a judgment is obtained by plaintiffs upon the new trial for said indebtedness; otherwise the attachment will be dissolved.

The judgment is reversed, and the cause remanded for a new trial.