## McKinney v. Morgan.

### Opinion delivered July 11, 1927.

Bills and notes—bank not bona fide holder when.—Where a bank, having taken over property of a debtor, negotiated a sale thereof, employing the former owner as agent to show the property to the purchaser, and, instead of conveying directly to the purchaser, reconveyed the property to the former owner and had him make conveyances to the purchaser, whereupon ·the notes made by the purchaser to the former owner were immediately turned over to the bank, *held* that the bank was not a *bona fide* holder of the notes in due course.

Appeal from Nevada Circuit Court; *James H. McCollum*, Judge; reversed.

*Dexter Bush* and *McKay & Smith*, for appellant.

*Gaughan & Sifford* and *Randolph P. Hamby*, for appellee.

Kirby, J. Appellee brought this suit in replevin to recover certain personal property, mules and teams, under a mortgage, in which he was trustee, the mortgagors having defaulted in the payment of the notes secured thereby.

It was alleged: "That on the 11th day of March, 1924, the said defendants were indebted to Earl Morgan in the sum of $5,000, as evidenced by ten promissory notes of that date, each in the sum of $500 and bearing interest at the rate of ten per cent. per annum from date until paid, the three last of which were due as follows: One due the 10th of January, 1925; one due the 10th of February, 1925, and one due the 10th of March, 1925, all of said notes having been purchased by the People's Bank of Stephens, Arkansas, for value before maturity, on the 3d day of April, 1924, and of that date assigned

to it by said Earl Morgan,'' and that, to secure the payment of all ten of the notes, the defendants executed to J. B. Morgan, trustee, a deed of trust conveying certain personal property, describing it, the same as that sued for, and, under the terms of the deed of trust, plaintiff was authorized, default in the payment of one of the notes having been made, to take possession of the property and sell same for the payment of the remainder of the notes; that all the notes except the three last coming due have been paid, and that, same being due and unpaid, plaintiff was entitled to the possession of the mortgaged property and to sell same for payment of the debt.

The defendants answered, alleging that they had purchased the property described in the complaint from the People's Bank of Stephens, Arkansas, together with the timber on certain lands near the sawmill in Columbia County, which they also bought at the time of the execution of the deed of trust, paying to the People's Bank $5,000 in cash and executing the notes and deed of trust to Earl Morgan, trustee, to secure the balance of the purchase money; that the bank represented to them that Morgan was largely indebted to it, and his indebtedness was secured by a mortgage, under the terms of which he had turned over all of this property to the People's Bank to satisfy his indebtedness, but, not having deeded the property to the bank, to save trouble and expense, the bank had Earl Morgan to deed the property directly to them and the defendants to execute the deed of trust and notes referred to in the complaint direct to Earl Morgan, which notes and deed of trust were immediately transferred to the People's Bank, and that the defendants did not negotiate with any one in the purchase of the property, other than the People's Bank, did not know that the title to the property had not been conveyed to it until the papers were to be executed, which were executed for the reasons above stated. It was further alleged that, during the negotiations with the People's Bank for the purchase of the mill, timber and outfit, the bank had Earl Morgan to carry them out there and show them the

property, and that he showed and represented to the defendants that the People's Bank was the owner of the timber on a certain 60 acres of land, describing it, which was to be conveyed to them in the transaction, and which was not conveyed to the defendants, who did not know the description of the land upon which the timber was standing, but, after they purchased the property from the People's Bank, it developed that the bank did not convey to the defendants the timber on the 60 acres of land shown them, but that it was owned by another lumber company, which cut and removed the same, and "that defendants relied upon the representations of Earl Morgan, who was acting for the People's Bank in selling this property to the defendants, that the People's Bank was the owner of the timber standing upon this land and that defendants were getting a deed for same, and, but for such representations, would not have purchased the property and paid to the People's Bank the price therefor; that the timber so shown to the defendants and represented as being sold and conveyed to them was of the reasonable cash market value at that time of $1,500, and that the defendants, by reason of said misrepresentations by the People's Bank, have sustained damages in the sum of $1,500. They admit that there are three notes of the full sum of $1,500 that the defendants have not paid and are refusing to pay to the said People's Bank, but that said notes are fully offset by reason of the defendants' claim for damages as aforesaid, and that the defendants are not due the People's Bank of Stephens any sum whatever on said notes.

The plaintiff denied the allegations of the answer and that defendants had been damaged by any misrepresentations made by him, and that he represented to them that either himself or the bank was the owner of the timber on the lands described in the answer, and alleged that no timber had been removed by any one but the defendants, after their purchase from Morgan, and, further, that the People's Bank was the holder of said notes in due

course, purchased for value before maturity and without notice of any defense.

The testimony shows that the bank was carrying Morgan for a large amount, and that he was operating the sawmill unsuccessfully and at a loss, when defendants were in the market for such a mill outfit; that they talked to the cashier of the People's Bank, which bank had a mortgage on Morgan's property and was about to foreclose same, and had stopped the operation of the mill; that they talked with the cashier of the bank, McClerkin, several times before the transaction was completed; that he told them that Morgan would show them the property and the timber that he and the bank owned, and finally the trade was made, defendants depositing $5,000 in the bank, to be paid when the papers were executed, and afterwards it paid $3,500 to the bank, making the check payable to McClerkin, the cashier, who wrote it, making in all $8,500; that they did not know at that time the bank was not to make conveyances to them. None of the defendants know the description or location of the lands upon which the timber purchased with the plant was situated, none of them having ever been in the county before. The cashier told them that Morgan would show them the property, and he did show them the 60 acres of land described in the answer, with virgin timber on it, telling them it was included in the purchase.

The mill was rebuilt by the purchasers on the south end of the timber tracts—it was something like three miles from the timber—with a view to sawing the timber on the 60 acres of land more conveniently, it being but a quarter of a mile from the mill. They operated the mill for several months, and the question arose about the ownership of the timber on this 60 acres of land described, and they had a survey made, and discovered that this best timber that had been shown them, and represented as being included in the sale and conveyance to them, belonged to another lumber company, as one witness said, "all the timber they cut except a few little bunches, which they bought from others, was old-field stuff. Mor-

gan had shown them the timber that belonged to Creason-Grayson Lumber Company, and when they found that out was when they stopped paying the notes. Mr. Morgan showed them this timber at the request of Mr. McClerkin, the cashier of the bank. Mr. McClerkin was familiar with every deal that they made in the case. When Mr. Morgan went down there with them at the request of the cashier of the bank, he showed them about 60 acres of timber that they later found out did not belong to him or the bank. This was the only real good timber in the deal. They would not have made the deal if this 60 acres of good timber had not been included and had not been shown to them as part of the deal. They placed the mill at a disadvantage to the other timber in order to get closer to this timber with the mill."

When the other lumber company commenced cutting timber near their mill, they had the land surveyed, and disavowed that the 60 acres of timber they bought, which had been shown to them by Morgan for the bank as included in the trade, did not belong to them. The 60 acres actually conveyed was a cotton-patch with no timber on it. The testimony shows that the timber on the 60 acres of land shown the appellants by Morgan and represented to be included in the trade was worth $1,500.

Instruction No. 3 was given over appellant's objection, and the court's refusal to give their requested instruction Nos. 1 and 3 as follows is also complained of, instructions:

Instruction No. 3 given:

"You are instructed that, if you believe from a preponderance of the evidence in this case that the People's Bank of Stephens, for a valid consideration, purchased the notes in question before they became due and at a time when said People's Bank had no knowledge of any defense the maker of said notes had to same, then you are told that said bank is what is known as an innocent purchaser of said notes, and plaintiff is entitled to recover of and from the makers of said notes the property sued

for, or its value, not to exceed the amount due on the notes secured by the deed of trust."

Instruction No. 1:

"You are instructed that, if you find from the evidence that the People's Bank of Stephens knew of the terms of the trade between Morgan and Smith & McKinney before it was consummated and contracted with Earl Morgan to the effect that they would take said notes and extend credit on them before they were executed, then said bank could not be an innocent purchaser of said notes."

Instruction No. 3:

"Although you may not believe that the bank itself sold the property in question to the defendants, still, if you should find that both the bank and the witness, Earl Morgan, were financially interested in the sale of said property, then you are told that the bank could not be an innocent purchaser of the notes in question."

It is insisted for reversal that the court erred in giving instruction No. 3 over appellants' objection and in refusing to give their requested instructions Nos. 1 and 3, and the contention must be sustained.

The undisputed testimony shows that the bank had taken over the mill and property of Morgan, who had been unsuccessfully operating it, and had become so greatly indebted to the bank that it had refused to carry him further; that the negotiations for the sale of the property were between the cashier of the bank and the appellants; that the bank sent Morgan to show the property to the prospective buyers; the terms of sale were agreed upon between the buyers and the cashier of the bank, upon representations made by Morgan, who had been designated by the cashier as agent for the purpose; that the appellants understood that they had made the trade and bought the property from the bank, until the conveyances were made, and it was then discovered that the bank had reconveyed the property to Morgan and had him to make the conveyances to the purchasers and take the notes and mortgages therefor.

The undisputed testimony also shows that all the property purchased by appellants was owned by the bank, except about $830 worth of timber belonging to Morgan. The $5,000 payment in cash was made by check to McClerkin, the cashier of the bank, and the other notes were turned over to him by Morgan, upon completion of the sale. Under these circumstances the bank could not become a *bona fide* holder of the notes in due course. It was, in fact, a party to the contract of sale and necessarily chargeable with notice of any defects or defenses to the notes given by appellants for purchase money in concluding the transaction, and this without regard to the fact that, after the terms of the sale had been agreed upon, the bank reconveyed the property to Morgan, who, in turn, conveyed it, as already stated, to the purchasers. The bank occupies no better position, so far as being a *bona fide* purchaser without notice is concerned, than Morgan, who executed the conveyances of the property to appellants, after it had been reconveyed to him by the bank, for the purpose, taking their notes for the balance of the purchase money and the mortgage securing same, and transferring the notes to the bank. *Hogg* v. *Thurman*, 90 Ark. 93, 117 S. W. 1070, 17 Ann. Cas. 383.

The court therefore erred in giving said instruction No. 3, permitting the jury to find that the bank was a *bona fide* purchaser of the notes. This question should not have been submitted to the jury at all, under the circumstances, as the bank occupied no better position, relative to the defense to the notes arising out of the transaction, than did Morgan, who took the notes and transferred them to the bank under the circumstances stated.

The court also erred in refusing to give appellant's requested instructions Nos. 1 and 3, and such error was accentuated and the harmful effect of instruction No. 3, erroneously given, increased by the refusal to give the said instructions Nos. 1 and 3.

The undisputed testimony also shows that the market value of the timber on the 60 acres alleged to have been shown to appellants by Morgan, in the making of the

sale, as included in it, which was not in fact owned by either the bank or Morgan, nor conveyed in the transaction, was more than the amounts still due on the notes given for the purchase money; and the only question for the determination of the jury was whether the seller of the property had made such false representations about the ownership and conveyance of the 60 acres of timber as alleged, and could have been submitted as well on instruction No. 2, as asked by appellants, as upon the instruction as amended and given by the court, in which we find no error, however.

For the errors designated the judgment is reversed, and the cause remanded for a new trial.