WEST v. WHITTLE.

Opinion delivered December 9, 1907.

1. CONTRACTS—RESCISSION.—While solemn contracts between men should never be disturbed on slight grounds, yet whenever a person, through age, decrepitude, affliction or disease, becomes imbecile and incapable of managing his own affairs, an unreasonable or improvident disposition of his property will be set aside in a court of chancery. (Page 492.)

2. FRAUD—EVIDENCE.—A finding that defendant fraudulently procured from plaintiff a certain deed to land will be sustained by evidence that defendant paid therefor $666 2-3 when the land was worth from $4,000 to $8,000, that defendant was plaintiff's confidential friend,

and that defendant's mental capacities were so impaired by drink that he was incapable of managing his business. (Page 493.)

Appeal from Johnson Chancery Court; _Jeremiah G. Wallace,_ Chancellor; affirmed.

_Cravens & Covington,_ and _J. D. Hunt,_ for appellant.

_Winchester & Martin,_ for appellee.

HART, J. This a suit was instituted by William Whittle, Jr., as next friend of William Whittle, Sr., his father, against W. H. West to cancel a deed executed by his father to West conveying certain mineral rights to lands. situated in Johnson County, Arkansas. The tract contained eighty acres, and the consideration was $666 2-3.

The chancellor found in favor of the plaintiff, cancelling the deed and ordered the consideration restored to the defendant, and a decree was entered accordingly. Defendant has appealed.

It was alleged that Whittle, Sr., had been for many years a confirmed drunkard, that he was drunk on the day the deed was executed, that West was his intimate friend and confidential adviser, that the price paid was wholly inadequate, and that plaintiff was mentally incapacitated to make a deed.

The undisputed testimony shows that Mr. Whittle, Sr., is 62 years old; that he has been a whisky drinker all his life; that for the past twenty years he has been a hard drinker; that for the last ten or fifteen years he has been an habitual drunkard; that W. H. West was his confidential friend, and for many years had collected his rents for him.

Most of the witnesses agreed that Whittle was a man of little education, but was possessed of average intelligence, and that he was honest. All agree that his intellect had been impaired by the excessive use of whisky, but the testimony is conflicting as to the extent that his mental faculties had been weakened.

There is an irreconcilable conflict in the testimony of the witnesses as to whether or not at the time he executed the deed Wm. Whittle, Sr., was competent to bind himself by deed. There was a large number of witnesses who testified on this

point. It would serve no useful purpose to abstract their testimony here. Suffice it to say that the witnesses for the plaintiff testified that he was incompetent, and the witnesses for the defendant was equally positive that he was competent, to execute the deed and transact business in general. The witnesses are equally credible, and, no doubt, equally honest in their belief, and detailed the facts and circumstances upon which their opinion was based as they presented themselves to their minds.

This is not a case where the fact of drunkenness at the time of the execution of the deed alone is relied upon to establish the mental incapacity, but it is rather one where the party, by reason of long and continued use of intoxicating liquors to excess, has become incapable of managing his business, and mentally incompetent to dispose of his property.

The rule in this class of cases is laid down in the case of *Kelly's Heirs* v. *McGuire,* 15 Ark. 555, to be that "while the solemn contracts between men should never be disturbed on slight grounds, yet it may perhaps be assumed as a safe general rule that whenever a person, through age, decrepitude, affliction or disease, becomes imbecile and incapable of managing his affairs, an unreasonable or improvident disposition of his property will be set aside in a court of chancery." This rule has been repeatedly followed ever since by this court, being applied in each case as the facts warranted. *Oxford* v. *Hopson,* 73 Ark. 170; *Boggianna* v. *Anderson,* 78 Ark. 420.

In this case the testimony adduced shows that West possessed the confidence of Whittle. He collected his rents, lent him money to buy whisky with, and settlements were never had between them oftener than once a year. West knew that there was no financial necessity to cause Whittle to dispose of his land. He knew that Whittle's whole family was opposed to his disposing of either the land or the mineral rights. In this particular transaction he was careful not only to have Whittle count the money, but to have him count it in the presence of a third person. Whittle's wife had heard of the proposed trade, and came to his store the day before the deed was executed, and remonstrated with him, West, about it. West walked away from her. He paid no attention to the repeated

requests of Whittle's daughter not to lend her father money; that he was drinking it up and neglecting his family.

There was no relinquishment of dower on the part of the wife.

The testimony shows that mineral rights when prospected were worth from fifty to one hundred dollars per acre. The lands contiguous to the lands in controversy had been prospected for coal, and a vein over four feet had been located. Its general direction had been ascertained, and was known to extend through the land in controversy. A proposed spur or branch track from the railroad had been located, and the agent of the railroad company a short time before had come to see Whittle about securing a right-of-way through his land, and, finding him intoxicated, talked of leaving and returning again to see him. West with a smile remarked that he might as well trade with him; that he was always drunk. The deed was executed on the 2d day of August, and it is undisputed that on the 8th day of the month Whittle was suffering from delirium tremens to the extent he would see rats, mice and four-legged chickens on the clock, and feared that he would die. He was put under treatment for the liquor habit, and so continued for more than a year, when his deposition was taken by the defendant. He remembered making the deed, but said that he only sold a two-thirds interest. He denied that there was any clause in the deed giving the defendant right-of-way for switches to any mine that might be opened up, or the right to sink air shafts.

In the case of *Hightower v. Nuber,* 26 Ark. 611, the court said: "And in a court of equity, where bad faith and unconscionable acts can have no allowance or favor, the strength of mental capacity of the parties, the circumstances surrounding them, their relationship, etc., make up the grounds upon which the court can find the real influences that produced the conveyance. And when it is discovered that the party in whose favor the conveyance was made possessed an undue advantage over the grantor, and in person, or by agent, exercised an improper influence over such one, and to the advantage of the grantee, it is an act against conscience and within the cognizance of a court of equity."

The chancellor found that the whole substance of this

transaction shows a want of capacity or undue influence; and, as said in the 'case of *Boggianna* v. *Anderson, supra,* this kind of case is one where the chancellor's finding has persuasive authority, and is entitled to weight and consideration.

Affirmed.