## CAMPBELL *v.* LUX.

### Opinion delivered December 13, 1920.

1. DEEDS—COMPETENCY OF GRANTOR—GROSS INADEQUACY OF PRICE.—Gross inadequacy of the price paid for land, though not controlling, is a circumstance to be given much weight in determining whether the seller was competent to convey.

2. DEEDS—COMPETENCY OF GRANTOR—AGE AND FEEBLENESS.—The fact that a grantor of land was old and in feeble health is a strong circumstance to be considered in weighing the conflicting testimony bearing on the question of his mental capacity.

3. DEEDS—COMPETENCY OF GRANTOR—EVIDENCE.—In a suit by the heirs of a grantor of land to set aside his conveyance for his incapacity, the chancellor's finding that the grantor was incapable of conveying *held* supported by a preponderance of the testimony.

Appeal from Polk Chancery Court; *James D. Shaver,* Chancellor; affirmed.

*Prickett & Pipkin,* for appellant.

1. The consideration for the deed from Brock was adequate. Mere inadequacy of consideration is not suf-

ficient to set aside the deed, unless so gross as to shock the conscience and amount to fraud. 13 C. J. 366. See 239-b. In the light of the evidence the consideration was not grossly inadequate.

2. The transaction was neither unreasonable or improvident. Mental incapacity of Brock was not shown by the testimony, nor does it show imbecility or incapability.

3. The transaction was not unconscionable. There was absolutely no evidence of fraud or undue influence, and the decision of the chancellor is against the clear preponderance of the testimony. 2 Ark. 92; 78 *Id.* 420; 15 *Id.* 555; 49 *Id.* 367. The consideration was adequate; there was no relation of trust or confidence between appellant and Brock, and no false or fraudulent representations or conduct upon the part of appellant. If Brock was of weak intellect, no advantage was taken of it by appellant, but plenty of time was given for friends and relatives to advise and intervene. The old man knew what he was doing and appreciated fully the effect and consequences of the transaction, as the evidence abundantly indicates.

*Lake & Lake,* for appellees.

1. The evidence fully sustains the findings of the chancellor. The clear preponderance of the testimony shows that Brock had become imbecile and was incapable of exercising a reasonable judgment in regard to the matter involved in the conveyance, and the finding is supported by a clear preponderance of the testimony. 15 Ark. 555; 84 *Id.* 490.

2. The consideration was wholly inadequate, and the other suspicious facts and circumstances raise a conclusive presumption that the mental weakness of Brock was wrought upon by Campbell to. obtain the deed for an inadequate consideration and the transaction was unfair, inequitable and unjust. 115 Ark. 430.

3. The transaction was unreasonable and improvident, and Brock was a mental wreck. 115 Ark. 430. The

decree is supported by the great preponderance of the evidence.    84 Ark. 490; 105 *Id.* 44; 115 *Id.* 430.

McCULLOCH, C. J.    Lawrence Brock, an aged man, residing in Polk County, owned a tract of land in that county containing 300 acres, and on February 12, 1917, he conveyed the land to appellant by deed reciting consideration of $100 paid in cash and $20 to be paid each month as long as Brock should live.    Brock died on January 7, 1918, intestate, unmarried and without issue, and on August 11, 1919, appellees, who are the collateral heirs of Brock, instituted this action in the chancery court of Polk County against appellant to cancel said conveyance on the alleged ground that it was obtained by fraud and undue influence and that at the time of said conveyance Brock did not possess sufficient mental capacity to intelligently transact business.    It was also alleged that the consideration for the conveyance was grossly inadequate.    The answer of appellant contained denials of each of the allegations of the complaint with respect to fraud and undue influence and mental incapacity of said grantor.    On the trial appellees rested their case on the charge of gross inadequacy of consideration for the conveyance and the mental incapacity of the grantor, and the chancery court rendered a decree in favor of appellees on those grounds.    Appellant had paid all of the monthly installments of the consideration up to the death of Brock and had also voluntarily erected a monument at Brock's grave at an expense of $200, and a lien on the land was decreed in his favor for the consideration paid, for the amount of taxes paid and for the cost of the monument.

There is conflict in the testimony on the issues involved, but as to many important facts the testimony is undisputed.

Brock was seventy-seven years of age, and for many years had been and was then afflicted with chronic diarrhea and bladder trouble which impaired his physical health and strength to a very considerable extent.    His

mental faculties were also impaired—the testimony being conflicting as to the extent.

The testimony varied as to the market value of the land—the estimates of witnesses ranging from $1,500 to $5,000 valuation. There were fifty or sixty acres of the land fenced and in cultivation, the improvements being poor and somewhat out of repair, and the annual rental value was about two hundred dollars. The testimony warrants a finding that the land was worth three thousand dollars.

Many witnesses gave testimony concerning the habits and mental capacity of the old man. They told of his peculiarities and idiosyncracies. He was, according to the testimony, childish and had hallucinations. He was constantly obsessed with the belief that he was in danger of being poisoned and of being robbed and killed. His conversation was generally incoherent and disconnected, and he was forgetful—would start to relate some incident in his life and then forget what he was relating. A few days after he executed the deed to appellant he went to Texas to visit two of his nephews and was gone about three weeks. When he returned home and got off the train, he stopped near the coach, and, on being cautioned by the conductor of his position of danger, he replied that the train could not run over him. He related, as an incident of his journey, that he had been accompanied by a band of Indians who protected him from assaults and fought for him until the last one of them was killed in defending him. He spoke of visiting relatives at saw-mills in Polk County where they were residing—said that the train carried him around through the mountains to each of the mills.

Mr. Parker, a witness, who was engaged in the real estate business, testified that Brock listed the land with him for sale and kept it so listed up to the time of his death; that Brock declined an offer of $3,000 for the land about five years before he conveyed it to appellant; and that some months after Brock executed the deed to ap-

pellant he talked to witness about selling the land, but said nothing about having conveyed it to appellant. The witness testified that Brock was decidedly lacking in mental capacity. On the other hand, many witnesses testified that Brock was, though feeble in health and strength, of sound mind and was capable of transacting business intelligently—such transactions as he was interested in.

The deed to appellant was written by Mr. Ragland, who resides in Mena and is engaged in the business of abstracting land titles. He was introduced as a witness by appellant, and was a very candid and apparently truthful witness. He testified about the execution of the deed and related all of the circumstances of the transaction. He testified that he had no previous acquaintance with Brock, but met him by accident in the bank of which appellant was cashier, and was asked by Brock to prepare the deed; that he prepared the deed according to Brock's direction and took the latter's acknowledgment, and that Brock seemed to fully understand the details of the transaction. He stated that Brock was old and appeared to be "cranky," but that he saw nothing in his conduct to indicate that he was lacking in mental capacity to transact business or was not in full comprehension of the transaction he was then conducting.

Appellant testified in his own behalf, giving all of the details of his purchase of the land from Brock. He testified that Brock did his banking business there at the bank of which he (appellant) was cashier, and mentioned one day his desire to sell the land; that he (appellant) offered to buy it and pay $50 cash and $20 per month as long as Brock lived, and that Brock replied that it was a "funny kind of a trade," but that if appellant would give $100 cash and $20 per month, he might make the deal; that he told Brock to "go off and study about it" and that Brock came back several times to talk about the trade and finally came in and accepted the terms proposed and the deal was closed. He testified that Brock gave no indications of not fully understanding the details

of the transaction and was mentally capable of conducting the transaction.

The terms of the sale of the land by Brock to appellant were unusual and were undoubtedly improvident—such as a man of reasonable judgment would not ordinarily have accepted. Brock was old and very feeble—his affliction was grievous, and he could not reasonably have expected to live but a few years. He had no other means of support, and there appears to have been nothing in the relationship between the parties to justify the belief that Brock desired to extend a gratuity to appellant or to make a sale of the land to appellant on terms extremely disadvantageous to himself. In other words, it is difficult to find a reason for the improvident sale except the fact that Brock was mentally incapable of taking care of his own interests in the transaction. For a small and grossly inadequate consideration he was tempted to part with all the property he owned. This being true, the really difficult question to decide is whether or not the mental incapacity of Brock extended to the point that at the time he executed the deed he did not comprehend the nature and importance of the act so as to justify a court of equity in cancelling the conveyance. The gross inadequacy of the price paid for the land—a fact well established by the testimony—though not controlling, is a circumstance to be given much weight in deciding an issue of this kind. *Kelly's Heirs* v. *McGuire,* 15 Ark. 555; *McEvoy* v. *Tucker,* 115 Ark. 430.

The fact that the grantor was indisputably old and in feeble health is another strong circumstance in weighing the conflicting testimony bearing on the question of his mental capacity. The testimony of Mr. Ragland as to the apparent intelligence of Brock at the time he executed the deed is persuasive, but it can not be given controlling weight when considered in view of the fact that the witness had no previous acquaintance with Brock and saw nothing of him afterward, and when weighed in the light of the testimony of many other witnesses

who were much better acquainted with Brock and had better opportunities to judge of his mental capacity. We can not reach the conclusion that the findings of the chancellor were against the clear preponderance of the testimony.

.The decree is therefore affirmed.