SUGGS *v.* VALENTINE, GUARDIAN.

4-6712                                    160 S. W. 2d 890

Opinion delivered April 13, 1942.

*Ralph W. Robinson,* for appellant.

*R. S. Wilson,* for appellee.

HUMPHREYS, J. Mrs. Margaret Valentine, a practicing attorney in Van Buren, Arkansas, was appointed guardian by the probate court of Crawford county for Mrs. Annie McIlvaigh in March, 1941, on petition of some of her relatives in a proceeding to declare her incompetent to attend to her business affairs.

After qualifying as guardian, she made an effort to ascertain whether Mrs. Annie McIlvaigh had acquired building and loan stock from her brother, M. F. Winn, under his will and, if so, what disposition had been made of it. Her brother died testate in February, 1939. Her

investigation led her to believe that Mrs. Annie Mc-Ilvaigh had received under the will a building and loan certificate of stock for $1,000 in some building and loan association in Arkansas, but she could find no record showing that she had received such a certificate or what disposition had been made of it. Mrs. Annie McIlvaigh remembered nothing about getting the certificate or cashing it.

Miss Laura Haines nursed Mrs. McIlvaigh's brother in his last illness, and remained in the home quite a while after the brother died to look after the welfare of Mrs. McIlvaigh and to assist her in her business matters. Miss Haines refused to give Mrs. Valentine any information about the certificate of stock or the disposition which had been made of it.

So, also, did G. A. Suggs who had been partly reared by Mrs. McIlvaigh while in his father's home and who assisted Mrs. McIlvaigh in looking after her business affairs after her brother died.

Mrs. Margaret Valentine, guardian aforesaid, contacted and inquired of G. A. Suggs concerning the stock certificate and what disposition had been made of it and he denied any knowledge of the certificate or what had become of it.

Mrs. Margaret Valentine then communicated with several building and loan associations in Arkansas and the bank in Van Buren where she had transacted her business and discovered that the building and loan certificate had been issued by the Peoples Building & Loan Association of Little Rock, Arkansas, and that application had been made by Mrs. McIlvaigh on April 16, 1940, to cash said certificate and that the money for same was paid to her at the Peoples Bank & Trust Company in Van Buren, Arkansas, on May 17, 1940, in $20 bills and that on the same date G. A. Suggs had paid $975 in cash, balance of the purchase money, for a home he had theretofore contracted to buy.

Suit was then brought by the guardian in the chancery court of Crawford county against appellants alleging in substance that G. A. Suggs obtained the proceeds

of the building and loan certificate and an additional
$100 which she had saved for burial expenses from Mrs.
McIlvaigh through undue influence growing out of their
close relationship at a time when she was sick in mind
and body and not able to resist his entreaties, and that
after wrongfully getting the money without any con-
sideration whatever he used same to purchase and repair
a home for himself and wife, Vera Suggs, in Crawford
county, described as follows:

"The south half of the SW¼ of the SE¼ of sec-
tion 13, in township nine north, range 32 west, except
a tract sold to Addie L. O'Bryan and to the church, 75
by 115 feet, beginning at a point 30 feet north of the SW
corner of said tract, thence east 225 feet, thence north
115 feet, thence west 75 feet, thence south 65 feet, thence
west 150 feet, thence south 50 feet to the place of be-
ginning.

"Also, part of the NW¼ of the NE¼ of section 24,
in township 9 north, range 32 west, beginning at a corner
rock at the NE corner of said school lot, thence east 15¾
poles, thence south 140 feet, thence west 15¾ poles, thence
north 140 feet to place of beginning."

The prayer of the complaint was that a lien be de-
clared on said lands for the amount thus wrongfully
obtained from Mrs. Annie McIlvaigh without considera-
tion and with which he purchased said lands and the sale
thereof to satisfy said lien.

Appellants filed an answer denying each and every
allegation of appellee's complaint.

The prayer of the answer was that appellee take
nothing by reason of her complaint, and that appellants
have judgment for their costs.

The cause was submitted to the court upon the
pleadings, testimony and exhibits resulting in the finding
of the issues for appellee and a decree adjudging a lien
upon the real estate for $1,075 with interest thereon at
the rate of six per cent. per annum from the 17th day of
May, 1940, until paid and all costs laid out and expended

by appellee, and for an order of sale of said real estate to satisfy the lien, from which is this appeal.

The record reflects without dispute the facts detailed above leading up to the institution of the suit, and also that G. A. Suggs was present when Mrs. Annie McIlvaigh collected $1,000 in $20 bills on the building and loan certificate of stock, and that he witnessed her signature to the papers she was required to sign in order to collect the money, and, also, that he afterwards got $975 of the money and paid his vendor the balance of the purchase money for the lands involved in this suit, and that he afterwards got $100 from her to put a new roof on the residence located on the lands, which he and his wife, Vera Suggs, now occupy as their home; that he had paid $25 down when he contracted for the lands, and that the money he got from Mrs. Annie McIlvaigh was used to pay off the balance of the purchase money due thereon and that he afterwards used the additional $100 he got from her to put a new roof on the house. The record also reflects without dispute that Mrs. Annie McIlvaigh was appointed as executor of her brother's will and attempted to administer the estate with the aid of Miss Haines who remained with her after her brother died, and also with the assistance of G. A. Suggs. The record also reflects without dispute that Mrs. Annie McIlvaigh was feeble in mind and body and required much assistance in getting around from place to place on account of her physical ailments. The record also reflects that on account of her inability to properly look after her estate the probate court, upon application of some of her relatives, appointed Mrs. Margaret Valentine as her guardian.

The record also reflects that both Miss Haines and appellant, G. A. Suggs, denied any knowledge of the existence of the building and loan certificate or what disposition was made of it. The record reflects that G. A. Suggs admitted that he had denied any knowledge relative to the certificate of the stock, or the collection thereof, to Mrs. Margaret Valentine, but explained that his reason for his denial was that Mrs. Annie McIlvaigh had requested him to never tell that he had such knowl-

edge or that she had let him have any of the money collected on the certificate. He claimed that Mrs. McIlvaigh had made a present of the money to him with the inhibition never to tell any one that she had done so.

The record reflects that he admitted signing papers for her to collect the certificate of stock and using the money in the purchase of the lands in question.

The record also reflects that he had great influence over her having been reared by her from the age of seven years until he married.

After Miss Haines left and went to Oklahoma some question came up as to where Mrs. Annie McIlvaigh would live and G. A. Suggs suggested that she go to live with the Thurmans and when Mrs. Margaret Valentine told him that perhaps she would not be willing to live with the Thurmans he said to her that he could make Mrs. Annie McIlvaigh do anything he wanted to, and the result was that she did go to live with the Thurmans for a while.

Much evidence was introduced which conflicted as to the state of Mrs. Annie McIlvaigh's mind, but all admitted that she was very feeble in body and had to be assisted when she went from place to place. According to the record, Mrs. Annie McIlvaigh became weaker in both mind and body until her condition was such that the probate court appointed Mrs. Margaret Valentine as her guardian, on account of her incapacity to transact business.

The trial court, after hearing all the conflicting evidence as well as all the admitted facts, found that in April or May of 1940, Mrs. Annie McIlvaigh was so feeble in mind and body that she was incapable of making a present of the proceeds of the building and loan certificate to G. A. Suggs, and that he obtained the proceeds thereof, as well as the $100 she had saved to pay her funeral expenses, through his undue influence.

We are unable to say, after a very careful reading of all the testimony, that the court erred in so finding. In fact, we think the finding was in accordance with the great weight of the evidence.

This court said in the case of *Cain* v. *Mitchell,* 179 Ark. 556, 17 S. W. 2d 282, that: "A. D. Cain seeks to reverse the decree setting aside the deeds to certain lands from his mother to himself which were executed in December, 1921. The law relating to transactions of this sort is well settled in this state. Mental weakness, although not to the extent of incapacity to execute a deed, may 'render a person more susceptible of fraud, duress, or undue influence, and, when coupled with any of them, or even with unfairness, such as great inadequacy of consideration, may make a contract voidable, when neither such weakness nor any of these other things alone would do so.' *Pledger* v. *Birkhead,* 156 Ark. 443, 246 S. W. 510, and cases cited; and *West* v. *Whittle,* 84 Ark. 490, 106 S. W. 955. See, also, *Phillips* v. *Phillips,* 173 Ark. 1, 291 S. W. 802; *Campbell* v. *Lux,* 146 Ark. 397, 225 S. W. 653. In the case last cited the court said that gross inadequacy of price, although not controlling, is a circumstance to be given much weight in deciding an issue of this kind."

Our interpretation of the record is that appellant, G. A. Suggs, procured through undue influence over Mrs. Annie McIlvaigh practically all the money she had at a time when she was in distress on account of the death of her brother and at a time when she was feeble in mind and body and at a time when she was incapable of protecting herself against his importunities and at a time when she did not even know or realize what she was doing. She had forgotten that she had the stock and that she ever collected anything for it. It is admitted by him that he had great influence over her and he also admitted that he kept the transaction a secret from her relatives and friends and that when approached or contacted concerning same he falsified to the extent of saying that he knew nothing about the stock or the disposition made of same, and vehemently denied that he had ever gotten any money from her. It is true that in the trial he retracted all these denials and admitted getting the money. He justified his denials only on the ground that she had exacted from him the promise that he would never tell anyone about the transaction. His conduct throughout

very clearly indicates that he imposed upon an old lady, past seventy years of age, feeble in mind and body, in getting practically all of her money without any consideration, leaving her to drift from place to place more or less a dependent upon the generosity of others.

Appellants also insist upon a reversal of the decree because they say a hypothetical question propounded to Dr. H. W. Savery assumed facts that were not in evidence and omitted therefrom essential and undisputed facts in evidence.

The hypothetical question did not reflect the evidence verbatim, but, after a careful reading thereof and the very lengthy hypothetical question, we think that it reflected substantially all the evidence in the case. The test laid down by this court as to the correctness of a hypothetical question is that it must fairly reflect the evidence. *Taylor* v. *McClintock*, 87 Ark. 243, 112 S. W. 405.

The decree is, therefore, in all things affirmed.