## FLUKE *v.* SHARUM.

### Opinion delivered April 26, 1915.

1. FRAUDULENT CONVEYANCES—JUDGMENT CREDITOR—EXECUTION.—When the defendant, in a suit to set aside a conveyance, as made in fraud of a judgment creditor, is admittedly insolvent, plaintiff need not show an execution issued upon the judgment with a *nulla bona* return thereon.

2. FRAUDULENT CONVEYANCES—JUDGMENT CREDITOR—INSOLVENCY OF DEBTOR.—In a suit to set aside a fraudulent conveyance, it is not necessary to first obtain a judgment at law in order to prove insolvency, for insolvency may be established by any competent testimony, and only one suit is necessary to obtain relief.

3. FRAUDULENT CONVEYANCES—VOLUNTARY TRANSFER—PRESUMPTION.—A voluntary transfer of property by one in debt is presumptively fraudulent as to existing creditors, and if the debtor is insolvent or the gift will necessarily hinder, delay or defraud the donor's existing creditors, then it is conclusively fraudulent.

4. FRAUDULENT CONVEYANCES—INADEQUATE CONSIDERATION—VENDEE'S PARTICIPATION.—Mere inadequacy of price or consideration paid for lands alleged to be fraudulently conveyed is not sufficient to show

that the grantee participated in the grantor's fraudulent intent and is affected by it; it is only when the inadequacy of price is so gross that it shocks the conscience and furnishes satisfactory and decisive evidence of fraud that it will be sufficient proof that the purchaser is not *bona fide*.

5. FRAUDULENT CONVEYANCES—INADEQUATE CONSIDERATION—INTENT OF VENDEE.—Testimony showing the payment of a grossly inadequate consideration for the land of an embarrassed debtor is evidence affecting the good faith of the purchaser, from which it may be inferred, as a fact, that the purchaser knew of the fraudulent intent of his grantor, and thus assisted in the commission of the fraud.

6. FRAUDULENT CONVEYANCES—VOLUNTARY CONVEYANCE—HUSBAND AND WIFE.—A voluntary conveyance from a husband to his wife, held under the evidence to have been fraudulent.

7. FRAUDULENT CONVEYANCES—FORFEITURE OF LAND—RIGHT OF CREDITOR.— The rights of a creditor to follow the debtor's land will not be defeated by the act of the debtor in permitting the same to forfeit for taxes and procuring a relative to purchase the same, in order to defeat the creditor.

8. FRAUDULENT CONVEYANCES—HOMESTEAD.—A creditor can not complain of a voluntary conveyance by the debtor of his homestead, for the conveyance of his homestead, by one entitled thereto, can not be fraudulent as to creditors.

Appeal from Randolph Chancery Court; *George T. Humphries,* Chancellor; affirmed.

STATEMENT BY THE COURT.

Appellant brought this suit to set aside certain alleged fraudulent conveyances made by Sam Fluke to Abby Rebecca Anderson, whom he later married and to her, his wife.

Sam Fluke was indebted to Sharum upon a promissory note dated April 1, 1902, for $1,400 and interest, who brought suit in the circuit court thereon in December, 1906, and recovered a judgment in July, 1907, for $2,-199.18, a copy of which was exhibited with the complaint herein.

It is alleged that on the 29th day of May, 1906, Sam Fluke conveyed to Abby Rebecca Fluke the south half of the northeast quarter of section 27, eighty acres, township 18 in range 1, east, for a consideration recited in the deed of $300, with the fraudulent intent to defeat plain-

tiff in the collection of his debt, that he had conspired with said grantee, who knew he was largely indebted at the time and in fact paid no consideration for the conveyance and permitted it to be made in a conspiracy with said Fluke, to cheat, hinder and delay plaintiff in the collection of his debt.

As to the northeast quarter of the northeast quarter of said section, it was alleged that Sam Fluke permitted same to forfeit for taxes for the year 1907, that he personally attended the sale of delinquent lands on the 8th day of June, 1908, and at the sale became the purchaser of said tract for $5.43, and caused the certificate of purchase to be issued to Jule Anderson, the brother of his then wife, Abby Rebecca Fluke. That he later caused said Anderson to transfer the certificate to his wife and on the 22d day of December, 1910, caused a tax deed to be issued by the clerk to his said wife for said tract, all of which, it is alleged was a fraudulent transaction made with the knowledge of his said wife in furtherance of the conspiracy to defeat plaintiff in the collection of his debt.

It is alleged further that Sam Fluke on May 1, 1909, while plaintiff's judgment was in force, fraudulently executed a deed to his wife, Abby Rebecca Fluke, for the southwest quarter of section 23, for a recited consideration of $700, which his wife knowingly accepted with the fraudulent intent to defeat the plaintiff in the collection of his debt.

It is further alleged that Sam Fluke and his wife had executed a mortgage to the New England Securities Company of Kansas City upon the southwest quarter of section 23 and the south half of the northeast quarter of section 27, to secure a pretended indebtedness of $1,200 and that said deed of trust was executed in furtherance of a conspiracy to defeat the plaintiff in the collection of his debt; that said company knew of the fraudulent conveyances from said Sam Fluke to his wife of said lands.

Defendants answered separately, admitted that the plaintiff had secured the judgment against Sam Fluke;

denied that the conveyance to Rebecca Anderson of the eighty acres on the 29th day of May, 1906, was fraudulent or in furtherance of a conspiracy to defeat the plaintiff in the collection of his debt; alleged the consideration paid therefor was adequate and plead the statute of limitations. Denied that the lands were allowed to forfeit and were purchased and conveyed to Abby Rebecca Fluke as alleged and that the last conveyance of the southwest quarter of section 23 was fraudulent and alleged that it was a *bona fide* sale for a consideration of $700, which was an adequate price for the lands at the time thereof and further that said lands were the homestead of defendants and had been since the 26th day of December, 1906, and pleaded laches.

It was also alleged that the mortgage executed upon the lands was a valid conveyance.

The mortgagee denied all the allegations of the complaint relative to the execution of the mortgage and that the same was in any respect fraudulent, and alleged that it was a *bona fide* purchaser without notice.

The testimony shows that the note was executed, the suit brought and judgment obtained at the time alleged; that Sam Fluke had no other property than the lands in controversy; that he conveyed the lands to Rebecca Anderson on the 29th day of May, 1906, the fractional southwest quarter of section 23 and the south half of the northeast quarter of section 28, for a consideration of $300, recited in the deed and which he testified was paid in cash. That this was some time before he married the said Rebecca; that she had very little property at the time of the marriage and got $600 later on the land out of which she paid him $100, the balance due. That the timber had been cut from the eighty acres of land and that all the land with the timber on it had only cost $5 an acre. Denied having permitted the land to forfeit for taxes and stated that he was out of money and could not help it; that the land was low and wet and he did not have the money with which to redeem it, and his wife had proposed the transfer of the certificate from her brother. Said the land was not worth more than $200 now and that

when it was forfeited it was not worth one-half that amount.

Stated, relative to the conveyance of the southwest quarter in May, 1909, there were two pieces of the land, one owned by his wife which he had conveyed to her before and one by him, all held by tax title, that the description was so indefinite you could not locate either tract and his wife wanted to borrow some money to pay off the other $600, so he made the deed for the other tract to perfect the description and so the money could be borrowed. That he got part of the $700 that was borrowed. He admitted he had no personal property at the time of the trial and was considerably in debt. Said he got the deed from the chancery court since the last conveyance to his wife of 100 acres, but it was contained in the southwest quarter conveyed. Stated also that he had lived on the southwest quarter of section 23 as his homestead for thirteen or fourteen years, and about seventy acres of it was in cultivation.

Several witnesses testified that the 160 acres, the southwest quarter of the section was worth—the woods land about $15 an acre and the cleared land, from $35 to $40 an acre.

Mrs. Fluke testified that she bought the lands conveyed to her before her marriage and paid $300 therefor, cash. She paid $200 that she had on hand, received from her father's estate and she was not at that time contemplating marrying Mr. Fluke.

Her testimony was unsatisfactory in explaining how she had gotten the money with which to pay the consideration. She refused to answer several questions. She did not answer any questions relative to the transfer of the certificate of purchase for the lands bought at the tax sale and said she did not remember how much she paid her brother for it, that she paid something, but did not remember how much; that she got some money after mortgaging the other lands.

The lands in controversy were shown to be worth from $20 to $30 an acre at the time of the trial. Some witnesses put the cleared land at as high a value as $30.

One witness testified that the value of the land in 1905 and 1906, was $10 and $15 an acre and that Sam Fluke desired to sell the lands in 1909 and priced them at $25 an acre.

A witness testified that he had asked Fluke about whether he had settled up with Sharum and Fluke replied he had fixed it so the old man could not get it. He had made the stuff over to his wife. That this conversation occurred after Fluke had married his present wife.

There is no testimony relative to the possession of the lands except one witness said he lived about three miles from the Flukes and did not know that Mrs. Fluke owned the land. This witness also said that he had heard Mr. Fluke talking about selling the lands and that he did not know of any lands in that vicinity that could be bought in 1905 and 1906 at $2.50 to $5 an acre, after the timber was cut therefrom.

The court found in favor of the plaintiff and rendered judgment for the recovery of the amount due on the judgment sued on and declared same a lien on all the lands in controversy, subject to the lien of the New England Securities Co., whose trust deed was held valid. That the conveyances from Sam Fluke to Rebecca Anderson and to Rebecca Anderson Fluke, his wife, were fraudulent and set them all aside; that by reason of such conveyances he rendered himself insolvent and that the southwest quarter of section 23, claimed as the homestead was worth more than $2,500 at the time it was transferred by Sam Fluke to his wife Rebecca Fluke, and that she had never at any time held adverse possession of any of the lands conveyed to her, but merely held them in trust for her husband. They were all made in furtherance of the conspiracy to defeat the plaintiff in the collection of his debt, as well as the other creditors of Sam Fluke and that the procedure permitting the forfeiture of the forty acres of land for taxes was but a subterfuge made with the fraudulent purpose of placing it beyond the reach of creditors

and decreed accordingly, from which decree appellants appealed.

*J. J. Lewis, W. S. Pope* and *S. A. D. Eaton,* for appellants.

1.   While courts look with suspicion upon *voluntary* conveyances from husband to wife, yet where a valuable consideration passes from wife to husband such transfer is valid.   46 Ark. 542.

The first transfer antedated the marriage, and the burden is on appellee to show not only that the grantor was endeavoring to defraud creditors but that the grantee was cognizant of the fraud and participated therein.   49 Ark. 20; 64 *Id.* 184, 69 *Id.* 541; 17 *Id.* 146; 31 *Id.* 554; 41 *Id.* 316; 23 *Id.* 508; 33 *Id.* 762.   The transfer must render the vendor insolvent.   12 Ark. 381.   Mere inadequacy of consideration is not sufficient.   92 Ark. 248.

2.   No fraud was shown in allowing the tract to be sold for taxes, nor in the transfer of the certificate of purchase.   Kirby's Dig., § § 7105, 7114; 20 Cyc. 406.

3.   A *bona fide* purchaser is entitled to protection. Eaton on Eq. 162, 7 L. R. A. 118.   The second deed was made to cure error in description.   20 Cyc. 570.

4.   The 100 acres was a homestead and the value did not exceed $2,500; therefore the sale was not fraudulent.   57 Ark. 242; 52 *Id.* 101, 493.   Even if one transfer was in fraud of creditors, yet if others were free of taint they are valid.   20 Cyc. 411.   The conveyance must be fraudulent when made.   18 Ark. 172, 123; 20 Cyc. 413.

5.   As to the tax sale there was a plain remedy at law.   74 Ark. 161; 63 *Id.* 417; 66 *Id.* 488; 80 *Id.* 451.

6.   Appellee is barred by limitations and laches.   36 Ark. 25; 54 *Id.* 641; Kirby's Dig., § 5056; 56 Ark. 601; 58 *Id.* 95; 84 *Id.* 1; Pom. Eq. Jur. 418; Eaton on Equity 305.

*A. S. Irby,* for appellee.

1.   The husband's testimony amply shows his insolvency.   66 Ark. 489; 80 Ark. 447.   It was unnecessary to issue execution on the judgment.   80 Ark. 447.

2. No laches are shown. 96 Ark. 441; 100 *Id.* 403; 70 *Id.* 371. There was no adverse holding of the property. The statute of limitations does not apply. 86 Ark. 281; 74 *Id.* 317; 76 *Id.* 509.

3. Adequate consideration must be affirmatively shown. 46 Ark. 542; 49 *Id.* 20; 64 *Id.* 184.

4. The tax forfeiture was simply the second step in appellant's fraudulent scheme. No consideration was paid.

5. The homestead was shown to be worth more than $2,500, and cases (57 Ark. 242; 52 *Id.* 101 and 493), cited do not apply.

6. Even though it was not shown that the first transaction was fraudulent at the time the conveyance was executed, yet prior and subsequent conduct and transactions are sufficient to show that it was in fact fraudulent and part of one scheme to defraud. 20 Cyc. 414; 20 Cyc. 412; 101 Ark. 573.

KIRBY, J., (after stating the facts). It is contended first that the testimony is not sufficient to show any knowledge upon the part of the grantee Abby Rebecca Anderson of Sam Fluke's fraudulent intention to defeat the payment of his debts by the conveyance of the land. It is true the conveyance was made eight months before the marriage of Sam Fluke to Rebecca Anderson and that the deed recites a consideration of $300 paid.

The great preponderance of the testimony shows however that that was an entirely inadequate consideration for the lands and from the statements of both Sam Fluke and Rebecca Anderson, who was Rebecca Fluke at the time of the trial, it is extremely doubtful if any consideration was paid at all. The parties to the conveyance later married and the other conveyances were made from Sam Fluke to his wife of all his other property, leaving nothing from which the creditors could make their debts. He was indebted to the appellee at the time of these first conveyances and evidently intended to defeat the collection of the debt by the different conveyances of his property and expressed a conclusion that he had done so to one of the

witnesses, saying he had "put his stuff in his wife's name so Sharum could not reach it."

(1) He was admittedly insolvent at the time this suit was brought to set aside the conveyances, and being so, it was not necessary to show an execution issued upon the judgment with a *nulla bona* return thereon.

(2) It is no longer necessary in suits to set aside fraudulent conveyances to first obtain a judgment at law in order to prove insolvency which can now be established by any competent testimony and only one suit is necessary, to obtain the proper relief. Section 6297, Kirby's Digest and *Euclid Ave. National Bank* v. *Judkins,* 66 Ark. 489.

(3) The rule is also that a voluntary transfer of property by one in debt is presumptively fraudulent as to existing creditors and if the debtor is insolvent or the gift will necessarily hinder, delay or defraud the donor's existing creditors, then it is conclusively fraudulent. *Miles* v. *Monroe,* 96 Ark. 531; *Brady* v. *Irby,* 101 Ark. 573.

(4) Mere inadequacy of price or consideration paid for lands alleged to be fraudulently conveyed, is not sufficient to show that the grantee participated in the grantor's fraudulent intent and is affected by it.

It is only "when the inadequacy of price is so gross that it shocks the conscience and furnishes satisfactory and decisive evidence of fraud, it will be sufficient proof that the purchase is not *bona fide*" as said by Pomeroy. *Hershy* v. *Latham,* 46 Ark. 550; *Beebe Stave Co.* v. *Austin,* 92 Ark. 248.

(5) The testimony of the grossly inadequate price paid for the property is evidence affecting the good faith of the purchaser from which it may be inferred as a fact that the purchaser knew of the fraudulent intent of his grantor and thus assisted in the commission of the fraud. *Hogg* v. *Thurman,* 90 Ark. 93; *Beebe Stave Co.* v. *Austin, supra.*

(6) Here is shown such a grossly inadequate consideration paid for the lands first conveyed, according to the great preponderance of the testimony, and the evidence tending to show any consideration paid at all is of

such an unsatisfactory and doubtful character, with the marriage of the grantee to the grantor following so shortly after the conveyance, and we are not able to say that the chancellor's finding that the conveyance was voluntary and fraudulent is clearly against the preponderance of the testimony.

(7)    There is also sufficient testimony to sustain the chancellor's finding that the grantor allowed the tract of land conveyed to his wife by the clerk's tax deed, to be sold for taxes and purchased and the certificate issued to his wife's brother, who afterwards transferred it to her without any consideration paid or for a consideration paid by him with a fraudulent intent to evade the payment of appellee's judgment. It was but a subterfuge as shown by the testimony and no more valid as a conveyance to deprive the creditor of his right to resort to the land, than if it had been made directly by the debtor husband to his wife.

(8)    There is a different question raised by the last conveyance of the southwest quarter of section 23, containing 160 acres, which was occupied by the debtor as his homestead at the time of the conveyance. A creditor can not complain of a voluntary conveyance by the debtor of his homestead, for the conveyance of his homestead by one entitled thereto can not be fraudulent as to his creditors. *South Omaha Nat'l. Bank* v. *Boyd,* 79 Ark. 215; *United States Fidelity & Guaranty Co.* v. *Smith,* 103 Ark. 145.

It is not questioned that the said southwest quarter of the section last conveyed, was the homestead of the debtor, Sam Fluke, at the time of the voluntary conveyance thereof to his wife in 1909, but only insisted that it was of the value of more than $2,500 at the time of such conveyance as the chancellor found. Seventy acres of the land were cleared and in cultivation and the testimony tends to show that the whole tract was worth from $20 to $30 an acre, the cleared land being worth $30. Some witnesses placed the valuation at $15 to $20 for the uncleared and $35 to $40 an acre for the cleared lands. One

witness testified that Sam Fluke himself priced the whole tract at $25 an acre in 1909.

The debtor was entitled to a homestead not exceeding 160 acres of land with the improvements thereon to be selected by him, if the same did not exceed in value the sum of $2,500 and in any event to eighty acres, without regard to value. Section 3899, Kirby's Digest. Section 4, article 9, Constitution of 1874.

The last conveyance being of the homestead was valid without regard to the intent of the debtor or the fact that it was voluntarily made unless the lands exceeded in value the sum of $2,500 and valid as to eighty acres thereof in any event, and to so much more as would not make the acreage claimed of value greater than $2,500.

The chancellor evidently found that the whole quarter section last conveyed was worth more than the debtor was entitled to claim as a homestead and therefore set the conveyance aside as fraudulent, allowing him thirty days in which to make his selection of a homestead. The better practice doubtless would have been to have refused to set aside the conveyance as to eighty acres of the land or of so much more of the tract as the evidence showed to have been worth only $2,500 and decreed the sale of the other. The result will necessarily be the same upon the selection of the homestead and no prejudicial error could have resulted from the decree. Neither can we say that the chancellor's finding that the grantee had not held the lands conveyed adversely is not supported by the testimony. There was no evidence tending to show adverse possession of the lands by her in fact. *Martin* v. *Gregory,* 86 Ark. 281; *Baldwin* v. *Williams,* 74 Ark. 317.

Affirmed.