Cain *v.* Mitchell.

Opinion delivered May 20, 1929.

*E. M. CarlLee* and *W. J. Dungan,* for appellant.

*Jonas F. Dyson,* for appellee.

HART, C. J., (after stating the facts). The decree dismissing the complaint of Tori Cain Mitchell was correct. The lands sought to be recovered in that suit were partnership lands belonging to a firm composed of N. N. Cain and A. D. Cain. It is true that, according to the evidence adduced by the plaintiff, these lands belonged to N. N. Cain, and A. D. Cain did not become a member of the firm while the lands in question belonged to the partnership. In other words, according to the evi-

dence of the plaintiff, Tori Cain Mitchell, the firm of N. N. Cain and his son, W. R. Cain, was dissolved, and the lands in question became the individual lands of N. N. Cain. According to the testimony of A. D. Cain, he became a member of the firm at the time his father purchased the interest of W. R. Cain, and the lands continued to belong to the partnership. The chancellor found this issue of fact in favor of A. D. Cain, and it cannot be said that his finding is against the preponderance of the evidence.

Real estate purchased for partnership purposes, paid for with partnership funds, and held and used as partnership property, will be treated as personalty for the purposes of the partnership, and as partnership property, regardless of the manner or by what agency it is bought and in whose name the title is held. The holder of the legal title will be considered a trustee for the partnership. *Cain* v. *Hubble,* 184 Ky. 38, 211 S. W. 413, 6 A. L. R. 146. This is the legal effect of our own decisions bearing on the question. *Perciful* v. *Platt,* 36 Ark. 456; *Lenow* v. *Fones,* 48 Ark. 557, 4 S. W. 56; and *Lewis* v. *Buford,* 93 Ark. 57, 124 S. W. 244.

The evidence warranted the chancellor in finding that the lands in question were purchased by the firm composed of N. N. Cain and W. R. Cain, and that A. D. Cain became a member of that firm at the time N. N. Cain bought the interest of W. R. Cain, and that the lands continued to be partnership lands. Hence A. D. Cain became the owner of an undivided one-half interest in these lands by virtue of the partnership and of an undivided one-eighth interest in them as one of the four heirs of his deceased father. The court correctly held that he was entitled to an undivided five-eighths interest in said lands.

A. D. Cain seeks to reverse the decree setting aside the deeds to certain lands from his mother to himself which were executed in December, 1921. The law relating to transactions of this sort is well settled in this State. Mental weakness, although not to the extent of

incapacity to execute a deed, may "render a person more susceptible of fraud, duress, or undue influence, and, when coupled with any of them, or even with unfairness, such as great inadequacy of consideration, may make a contract voidable, when neither such weakness nor any of these other things alone would do so." *Pledger* v. *Birkhead,* 156 Ark. 443, 246 S. W. 510, and cases cited; and *West* v. *Whittle,* 84 Ark. 491, 106 S. W. 955. See also *Phillips* v. *Phillips,* 173 Ark. 1, 291 S. W. 802; *Campbell* v. *Lux,* 146 Ark. 397, 225 S. W. 653. In the case last cited the court said that gross inadequacy of price, although not controlling, is a circumstance to be given much weight in deciding an issue of this kind.

In the present case the record shows that A. D. Cain had moved into the house of his mother at the time she executed the deed to him in December, 1921. It is true that he testified that she was mentally competent, and that there was no consideration for the deed except the one dollar which was recited in the deed. He testified, however, that he furnished his mother with supplies from that time until the time of her death in 1926, and generally looked after her after he moved out of her home. The fact remains, however, that he moved out of the house soon after she executed the deeds to him, and that he never paid her doctor's bill nor any part of her funeral expenses. While he paid the taxes on the lands, he received the rents and profits from them, and some of the witnesses testified that it was understood that he was to support his mother and care for her until she died. She was old and helpless at the time she executed the deeds, and doubtless did so with the expectation that her son would continue to live with her and care for her until she died. The chancellor found that he did not do so, however; and the evidence shows that she suffered much from neglect during the last two years before she died. Under these circumstances it cannot be said that the chancellor erred in finding this issue against A. D. Cain and in decreeing that the deeds executed to him by his

mother, Mrs. Susan Cain, in December, 1921, to the lands in controversy, should be canceled and set aside.

We find no reversible error in the decree of the chancery court, and it will therefore in all things be affirmed.