MENTE & COMPANY, INC., *v.* WESTBROOK.

Opinion delivered February 24, 1930.

*Coleman & Gantt,* for appellant.

*Rowell & Alexander,* for appellee.

MEHAFFY, J. The appellant is a manufacturer of burlap bags in New Orleans. The appellee, Howell L. Westbrook, was formerly engaged in the grain and milling

business in Pine Bluff, under the name of Westbrook Grain & Milling Company. The appellee, Helen F. Westbrook, is his wife.

In August, 1920, Howell L. Westbrook entered into a written contract with Mente & Company, Inc., for the purchase of 75,000 yards of burlap to be manufactured into bags as ordered by him. As the bags were ordered, they were manufactured and shipped and were to be paid for within ten days. Orders were given and shipments were made from time to time, but Westbrook was slow in making his payments. After November 8, 1921, he failed to give any further orders or to answer letters, and the contract was by appellant treated as having been breached by him after he had placed orders for something like one-half of the burlap provided for in the contract.

Appellant brought suit against Westbrook on June 16, 1923, in the circuit court of Jefferson County, for damages for breach of the contract, and recovered a judgment of $2,162.84 with interest. The judgment was affirmed by this court on May 3, 1926. On May 20, 1927, an execution was issued and levied on H. L. Westbrook's interest in a lot in Pine Bluff. This lot was formerly the homestead of W. H. Westbrook, the father of Howell L. Westbrook, and under the will H. L. Westbrook claimed a one-half interest in the lot. After the levy of the execution Westbrook produced a deed which had not been recorded, purporting to have been executed by him to his wife on the 24th day of December, 1923. Westbrook had the deed recorded after the execution was levied. The sheriff proceeded to sell his interest in the lot, and the appellant subsequently received a deed from the sheriff.

On July 28, 1927, appellant filed this suit in the chancery court, alleging that the conveyance from Westbrook to his wife was made at a time when he was largely indebted and insolvent for the purpose of defrauding and delaying his creditors, and praying that the deed be can-

celed as a cloud on the title of appellant acquired at the execution sale.

We deem it unnecessary to set out the evidence in full, but the evidence, in substance, showed that H. L. Westbrook was engaged in the wholesaling of grain and manufacture of milling products in Pine Bluff from 1912 until some time in 1925. His business consisted almost altogether of buying grain in carload lots, and either selling it in its original state or after being manufactured into feed products. Practically his only creditor for a long while was the local bank from whom he borrowed money upon which to operate. In June, 1914, he executed a deed of trust upon all of his real estate except the lot in question to the Cotton Belt Savings & Trust Company for $20,000, and also covering all indebtedness which he might owe this bank. His indebtedness to this bank, secured by a deed of trust, was from $20,000 up as high as $80,000. At the time he executed the deed to his wife he was indebted to the Cotton Belt Savings & Trust Company something like $39,000.

The statement introduced in evidence showing the condition of Westbrook's business on December 31, 1923, showed that his net worth above his indebtedness was in excess of $100,000. The undisputed proof shows that the property cost to construct approximately $125,000. It was not encumbered in any way except the deed of trust to the bank. The undisputed proof also shows that at the time that Westbrook executed the deed to his wife, and at the time the judgment was secured in the Jefferson Circuit Court, he had ample personal property which could have been sold under the execution, and that it would have sold for enough to satisfy appellant's judgment. There was no effort on the part of Westbrook and nothing done by him to prevent the execution and sale of this property. After the judgment he prosecuted an appeal to the Supreme Court, but did not give any supersedeas bond, and there was nothing to prevent appellants from having the execution levied on the personal prop-

erty. Appellant not only did not do this, but no execution was levied after the affirmance of the case in the Supreme Court for about a year. The lot sold at execution sale for $570.40, plus the expenses of the suit, and this amount had been credited on the judgment of the Mente Company against Westbrook.

The bank foreclosed its mortgage or deed of trust, and at the foreclosure sale the property was purchased for $35,000. The bank afterwards sold it for $30,000. The sale of the property was not sufficient to pay the bank's claim, there being a balance of approximately $1,500. After the bank sold the property the purchaser expended approximately $20,000 on it. The property thereafter burned, and the owner collected $55,000 insurance. The undisputed proof shows that the insurance company deducted quite a sum because of the building not being entirely destroyed, and, in addition to this building, there was a warehouse that was not destroyed by the fire. The undisputed proof also shows that the amount of insurance paid was considerably less than the value of the property destroyed by fire.

The chancellor found that the execution sale should be set aside, and the deed executed by the sheriff to Mente & Company should be canceled, and that the credit of $570.40 upon the judgment in favor of Mente & Company against Westbrook should be set aside.

It is contended by appellant that the deed from Westbrook to his wife was made to defraud creditors. The bank intended at one time to include the lot in controversy in its mortgage or deed of trust, and prepared a deed of trust including this property, but it was never executed. The evidence shows that Westbrook took it to have it executed, but he did not do so, and he did not tell the bank at the time that the property belonged to his wife.

Appellant first cites and relies on the case of *Rudy* v. *Austin*, 56 Ark. 73, 19 S. W. 111, 35 Am. St. Rep. 85, in which it was stated: "If he be insolvent, unable to pay

his debts, the presumption that it is fraudulent as to antecedent creditors is conclusive."

And they also rely on the case of *Driggs* v. *Norwood,* 50 Ark. 42, 6 S. W. 323, 7 Am. St. Rep. 78, in which the court stated: "Every voluntary alienation of his property by an embarrassed debtor is presumptively fraudulent against existing creditors. Indebtedness raises a presumption of fraud, which becomes conclusive upon insolvency."

The declarations of law above set out have been many times approved by this court and there can be no controversy about the statements being correct, as many times declared by this court. But it is a question of fact in this case as to whether Westbrook was at the time of the conveyance to his wife insolvent. One is not prohibited from conveying his property to his wife or any other person simply because he is in debt. If that were true, most of the voluntary conveyances made would be void because most people are in debt. But if a man was really worth $100,000 above his indebtedness, it would certainly not be a fraud to convey property of approximately $1,000 value, although it might turn out thereafter that under a forced sale his property would not bring enough to satisfy his creditors. There is some evidence in the case tending to show that the wife of Westbrook declined to sign the deed of trust to all the other property which included the Westbrook home until Westbrook conveyed his interest in this lot. It is contended that the deed was not made on the 24th of December, 1923, as alleged by appellee, but we think the evidence is practically conclusive that it was made on the date mentioned. The fact that it was a voluntary conveyance, that it was made when Westbrook was indebted to the bank, and that it was not recorded, are all properly admitted in evidence for the purpose of showing whether the conveyance was fraudulent.

In the first place, courts should carefully scrutinize all cases of alleged fraud against creditors wherein

members of the family of the debtor make claim to important or valuable interests as creditors, or conveyances to husband and wife, when attacked as fraudulent should be very carefully scrutinized. And a gift of property to his wife by one indebted at the time is presumptively fraudulent as to existing creditors. When it is shown that a gift of property was made by the husband to the wife, that the husband was largely indebted at the time, the burden of proof is on the husband and wife to show that the debtor's intentions were innocent, and that he had at the time abundant means to pay all his debts. But, on the other hand, if the evidence shows that one had ample means to pay all his debts, the conveyance to his wife of property of small value as compared with his whole property, together with other facts tending to show good faith, would be sufficient to justify the conclusion that the transfer was not fraudulent.

There is no controversy about the principles of law in this case. The relationship of the parties, the fact that the conveyance was voluntary, and the fact of the indebtedness of the grantor at the time, are all to be considered in determining whether or not the conveyance was in fact fraudulent. But it is also well settled, that, if the evidence shows that the grantor had abundant means other than this property to satisfy all his creditors, the conveyance will not be declared fraudulent. It is also well settled that, to entitle a creditor to set aside a conveyance as fraudulent, it is necessary not only that there be fraud on the part of the vendor participated in by the vendee, but also that there be an injury to the person complaining. The creditor who seeks to set aside a conveyance as fraudulent must show that his debtor has disposed of property that might otherwise have been subjected to the satisfaction of his debt. And, not only that, but he must show that the debtor did not have other property sufficient to pay the creditor. And this is especially true where there is no evidence of fraud except the

relationship and the conveyance, and the fact that the debtor was largely in debt.

The undisputed proof in this case shows that the creditor could have made his money by the sale of personal property owned by the debtor at the time of the judgment in the Jefferson Circuit Court. If he had done this, the conveyance, even if fraudulent, could not have injured him, and fraud without injury or injury without fraud will not support an action to set aside a conveyance as fraudulent. 12 R. C. L. 491.

"Whatever may have been the early doctrine on the subject, at the present time there is no doubt that a husband may not only convey directly to his wife for a valuable consideration, but he may also convey to her as a gift when not prejudicial to his creditors. All gifts from a husband to his wife are good *inter se,* and against all persons claiming under them. The mere existence of the relation of husband and wife between the grantor and grantee does not create an implication as to fraud against creditors, especially where one fails to show that he was a creditor at the time of the conveyance, or that the husband was insolvent. To render a conveyance from husband to wife fraudulent and void as to creditors, there should exist an intent on the part of the husband to defraud, or at least to hinder and delay, his creditors. And if a conveyance is made with actual fraudulent intent, participated in by the wife, the conveyance will be void without question. It is unnecessary, however, that an actual fraudulent intent should exist on the part of the husband. Such intent may be, and generally is, inferred from the circumstances surrounding the conveyance, and the existence of the relation of husband and wife is an important fact to be taken into consideration in weighing the evidence relating to the good faith of a conveyance, and this because husband and wife have unusual facilities for the perpetration of fraud on creditors. A conveyance from husband to wife requires less proof to show fraud, and, when a *prima facie* case is made, stronger

proof to show fair dealing than would be required if the transaction were between strangers.'' 12 R. C. L. 513-14.

''Evidence of indebtedness at the time a conveyance is made is important, however, on the question whether such conveyance was fraudulent, but mere indebtedness at the time the conveyance was made, though evidence of fraud, does not necessarily make it void. So a conveyance to one's wife is not in fraud of the rights of creditors, where the grantor retains ample property for the satisfaction of all his debts, and there is no intent to defraud, nor is it fraudulent where the settlement itself provides for the payment of all existing debts, and such debts are actually paid in pursuance of the settlement. But a husband cannot give to his wife that which the law regards as belonging to his creditors.'' 12 R. C. L. 516.

In the instant case, as we have already said, the undisputed proof shows that when the appellant obtained judgment for breach of contract in the Jefferson Circuit Court an appeal was prosecuted by Westbrook without giving a supersedeas bond. And at that time the debtor had ample personal property which could have been sold and the judgment satisfied. No effort on the part of Westbrook was made to prevent this, and no effort on the part of the creditor was made to collect his debt. The undisputed proof is that he waited for more than a year after the case was affirmed in the Supreme Court before undertaking to collect his judgment.

As to whether the conveyance in the instant case was fraudulent and as to whether the debtor at the time had ample property out of which the appellant could have made its money are questions of fact, and the chancellor's decisions or findings on questions of fact are conclusive here unless contrary to the clear preponderance of the testimony. *Pattison Orchard Co.* v. *Southwest Ark. Utilities Corp.*, 179 Ark. 1029, 18 S. W. (2d) 1028; *Sternberg* v. *Lane*, 179 Ark. 448, 17 S. W. (2d) 286; *Cain* v. *Mitchell*, 179 Ark. 556, 17 S. W. (2d) 282.

Our conclusion is, that the finding of the chancellor is not against the weight of the evidence, and the decree is affirmed.