CRILL *v.* TRITES.

4-2688

Opinion delivered October 24, 1932.

*G. W. Botts,* for appellant.

*Ray S. Gibson* and *J. W. Burnett,* for appellee.

MEHAFFY, J., W. L. Trites is a farmer living at Gillette, Arkansas County. He owned real estate and personal property, most of which was incumbered. On December 28, 1926, Trites and his wife executed a deed to some property in the town of Gillette to their children, whose ages were 5, 7 and 9 years. On December 6, 1927, W. L. Trites filed his petition in bankruptcy. The appellant, H. E. Crill, was appointed receiver by the referee in bankruptcy, and was directed to bring suit in the Arkansas Chancery Court to cancel said deed, as being made without consideration, and for the purpose on the part of Trites to hinder and delay his creditors in the collection of the debt. Suit was filed in the chancery court of Arkansas County by the appellant, and the complaint alleged that Trites and his wife had executed said deed on December 28, 1926, and that said children were 9, 7 and 5 years of age, respectively; that said deed was made without consideration and for the purpose, on the part of W. L. Trites, to place said property beyond the reach of his creditors, and thus hinder and delay them in the collection of their debts; that said W. L. Trites was at the time of the execution of the deed insolvent, and that the deed was executed to defraud his creditors, and he asked for a cancellation of the deed. Answer was filed by appellees, in which they denied that the deed was executed for the purpose of hindering, defeating and

defrauding the creditors of W. L. Trites; denied that W. L. Trites was insolvent at the time of the execution of said deed, and alleged that said deed was executed nearly a year before he filed his petition in bankruptcy. He further alleged that he had severe financial reverses in 1927, and that the association failed to make settlement in full for his rice, and that these reverses made it necessary for him to file his petition in bankruptcy. An amendment to the answer was afterwards filed, in which was set forth in detail the value of the property Trites owned at the time of the execution of the deed, which was thought to be worth $15,000; that he owed his creditors at the time of the execution of the deed $8,000, and that he retained sufficient property to pay his creditors outside the property conveyed to his children; that the reverses of 1927 made it impossible for him to meet his obligations, and that this led to his filing his petition in bankruptcy. He owed, at the time he executed the deed, W. J. DeVore approximately $4,000. DeVore testified in substance that he had tried to collect from Trites and had endeavored to get Trites to give him security, which Trites refused to do; that the suit by DeVore against Trites was brought before the deed was executed to the children, but judgment was obtained after the date of the deed. He testified that at the time the deed was executed Trites was involved financially, and that these conditions finally led to his insolvency and bankruptcy. The debt of $4,000 to DeVore was secured by chattel mortgage, but none of the property was ever turned over to DeVore on the debt, and no part of the $4,000 had been paid. The debt to DeVore was originally $5,500, but had been reduced by payment to $4,000. He testified that Trites was insolvent, and he based his statement upon the fact that everything Trites had was mortgaged. He stated that Trites delayed the suit brought by DeVore against him as long as possible, and threatened bankruptcy if the suit were pushed. The petition in bankruptcy showed the total claims against Trites to be approximately $14,000. That he had never received anything on his judgment.

The appellant, H. E. Crill, testified about his appointment as a receiver and bringing the suit under directions of the referee in bankruptcy; that the secured claims in the petition for bankruptcy were more than $13,000, and that the value of the securities was placed at $9,875; that the total amount of his indebtedness shown by his petition in bankruptcy was $14,394.04. That his total assets listed was $5,357.25. Witness stated that all he had ever received as receiver for the bankrupt was $265.54; that no personal property came into his possession; that Trites, in his petition for bankruptcy, claimed his exemptions of $500, and that this was allowed without contest.

The undisputed evidence shows that, in the spring of 1927, Trites had 8 head of mules and a horse, all good stock, worth about $1,000, and that he had all the farming implements and equipment that he needed as a rice farmer, and was well equipped to run a rice farm. The undisputed evidence also showed that the flood of 1927 destroyed his oat crop, that his stock died, and that values went down, and that these things caused him to become insolvent and made it necessary to file his petition in bankruptcy. Trites filed a list of the property which he owned, together with its value, the aggregate value being $15,764.45. This property he owned at the time he executed the deed. There is no controversy about his owning this property or about its value. 160 acres of land was listed as of the value of $6,400. Two or three other witnesses, in addition to Trites, testified that it was worth $6,400. He also introduced a list showing his indebtedness at the time of the execution of the deed, which amounted to $5,955. The judgment of DeVore, added to this, would make the aggregate $9,955, showing that his assets at the time the deed was made exceeded his liabilities by $5,809. The evidence of Trites was corroborated by disinterested witnesses who testified as to the property owned by him and its value, and that he was solvent. The appellant's witnesses, DeVore and the receiver, testified that he was insolvent at the time the

deed was executed. The evidence shows there was no concealment about the deed; it was placed on record shortly after it was executed, and it was executed nearly a year before the petition was filed in bankruptcy.

If the deed by Trites to his children was made with the intention to hinder, delay or defraud creditors or other persons of their lawful actions, damages, forfeitures, debts or demands, as against creditors and purchasers, such deed would be void. Crawford & Moses' Digest, §§ 4874, 4878.

The questions here are, was Trites insolvent at the time the deed was made? And was it made with a fraudulent intent? A voluntary transfer of property to near relatives is presumptively fraudulent as to existing creditors, and, if the debtor is insolvent at the time, it necessarily hinders, delays and defrauds his existing creditors, and such conveyances to near relatives by a debtor who at the time is embarrassed, are looked upon with suspicion and scrutinized with care. *Fluke* v. *Sharum*, 118 Ark. 229, 176 S. W. 684; *Wilks* v. *Vaughan*, 73 Ark. 174, 83 S. W. 913; *Mente & Co., Inc.*, v. *Westbrook*, 181 Ark. 96, 24 S. W. (2d) 976.

The law as to fraudulent conveyances is well settled by the decisions of this court. It would serve no purpose to review all the decisions here. All of our decisions are to the effect that courts should carefully scrutinize all cases of alleged fraud against creditors where transfers have been made to members of the debtor's family. A gift of property to one's child by one indebted at the time is presumptively fraudulent as to existing creditors, and, when it is shown that a gift of property was made by the father to child, that the father was largely indebted at the time, the burden of proof is on the father to show that his intentions were innocent, and that he had at the time ample means to pay all his debts. On the other hand, however, if the evidence shows that one had ample means to pay all his debts, the conveyance to his child of property of small value, together with other facts tending to show good faith, would be sufficient to

justify the conclusion that the transfer was not fraudulent. *Mente & Co., Inc.,* v. *Westbrook, supra.*

The value of the property conveyed to the children in this instance was small, nobody fixing its value above $500. It is not only shown by the evidence that there was a disastrous flood in 1927, but this is a matter of common knowledge. The undisputed proof in this case shows that the appellee lost his stock, his oat crop and other property, and, but for these disasters and reverses, the value of his property would have been considerably more than his indebtedness. As to whether the conveyance in this case was fraudulent, and as to whether the debtor at the time had ample property out of which appellant could have made his money, are questions of fact, and the chancellor's decisions or findings on questions of fact are conclusive here, unless contrary to the clear preponderance of the testimony. *Mente & Co., Inc.,* v. *Westbrook, supra; Pattison Orchard Co.* v. *S. W. Ark. Utilities Corp.,* 179 Ark. 1029, 18 S. W. (2d) 1028; *Sternberg* v. *Blaine,* 179 Ark. 448, 17 S. W. (2d) 286; *Cain* v. *Mitchell,* 179 Ark. 556, 17 S. W. (2d) 282; *Jenkins* v. *Jenkins,* 81 Ark. 68, 98 S. W. 685; *Claypool* v. *Johnston,* 91 Ark. 549, 121 S. W. 941.

We have carefully considered all the evidence in the case, and have reached the conclusion that the finding of the chancellor is not against the preponderance of the evidence, and the decree is therefore affirmed.