**UNITED STATES v. SHOEMAKER et al.**

Nos. 2334 and 2406.

United States District Court
E. D. Arkansas, W. D.
Jan. 16, 1953.

James T. Gooch, U. S. Atty., Little Rock, Ark., R. D. Smith, Jr., Asst. U. S. Atty., Little Rock, Ark., for plaintiff.

E. M. Arnold, Little Rock, Ark., U. A. Gentry, Little Rock, Ark., for defendants.

TRIMBLE, Chief Judge.

This cause came on for trial and the Court, having heard the evidence and considered the stipulation of the parties, finds the facts and states the conclusions of law as follows:

### Findings of Fact

1. This is an action by the United States of America against Elizabeth F. Shoemaker and Audria Hart, citizens of Arkansas, and Checker Cab & Baggage Company, Yellow Cab Company, Inc., and Yellow Cab Building Company, Inc., corporations, to collect delinquent income and excess profits taxes adjudged to be due by the Tax Court of the United States.

2. The parties on December 15, 1952, entered into and filed with the Court stipulation of facts, which is now a part of the record in this case. The Court now adopts and makes this stipulation and the facts set out therein a part of this finding of facts.

3. The Court makes the exhibits to the stipulation of facts a part of the finding of facts.

4. From the stipulation of facts and the testimony of witnesses ore tenus before the Court, it is a fact that the defendant, Audria Hart, and Elizabeth F. Shoemaker, her sister, and the corporate defendants herein,

(a) Had no regular bank account through which the funds coming into the business were deposited as is usual in operations as extensive as were being conducted here.

(b) Had no adequate records through which the transactions of the businesses were set up so that they might be examined by proper authorities, or from which adequate reports could be made in keeping with usual and ordinary business practices.

(c) Did their business in an unusual manner, through the use of lock boxes in which money was placed without making any record thereof, and from which money was

withdrawn, without a record of when, how and for what purpose it was done.

(d) Elizabeth F. Shoemaker and Audria Hart, here sister, maintained joint bank accounts on which both or either of them could draw, and maintained joint lock boxes to which either or both had access.

5. Audria Hart, when a witness in her own behalf, could not or did not explain when, whence or from whom she got the stock certificates which allegedly secured her loans, nor could she tell when or how the mortgage came into her possession. She did not have the mortgage recorded and could not explain why the notation on the mortgage required it to be returned to her sister, Mrs. Shoemaker, after recordation.

6. Her account of the source or sources from which she claims to have secured the moneys for these loans is not credible. She testified that her husband was a bookkeeper residing in Pine Bluff, Arkansas, and that he died in 1927. She testified that there was a will which was probated, and that this will left her the major part of the estate. She also testified that her husband had a very considerable sum of money in a lock box which she received, and that "When everything was sold," she was able to leave Pine Bluff, Arkansas, for Tulsa, Oklahoma, with about $80,000, "Plus Pullman tickets for herself and her mother." She also testified that she did not file an inventory of this money in the probate proceedings. That there were some other assets about which she was indefinite, but that there was a home on which there was a mortgage; that she did not make any further payments on this home but left town with the money in a handbag. She says that since 1927 she has kept this money in lock boxes in different towns where she has lived. None of this testimony is supported by record or parole evidence.

7. The court finds that Audria Hart has not brought in any credible evidence to support her contention that she made these large loans to her sister, Mrs. Shoemaker, and the corporate defendants.

8. Her claim that she placed a mortgage on her home for money is supported by some corroborating testimony, but that she loaned this money to her sister and the corporate defendants is unsupported by credible evidence.

9. The Court finds that the defendants, Elizabeth F. Shoemaker, Yellow Cab Company, Inc., and Checker Cab & Baggage Company, are now insolvent and were insolvent upon the date of the execution of the mortgage to the defendant, Audria Hart, and the delivery to her, if any, of the certificates of stocks by her sister, Mrs. Elizabeth F. Shoemaker.

10. From all the facts in the case, the Court finds that the mortgage executed by the corporate defendants and Elizabeth F. Shoemaker, to her sister, defendant Audria Hart, and the delivery to Audria Hart of the certificates of stock, if any such delivery took place, was fraudulent and void as to existing creditors, and that the United States of America was an existing creditor at that time.

### Memorandum

The defendants in their brief state the issue here to be: "The only remaining question for determination by the Court is whether there was consideration for the note, mortgage and pledge executed as set out in the stipulation. This is the only issue covered, or which properly should have been covered by the oral testimony." With this statement of the issue the Court quite agrees.

The validity of the mortgage as between the defendant, Audria Hart, and the plaintiff, United States of America, in this proceeding, is controlled by the statutes of Arkansas and the decisions of the Supreme Court of Arkansas.

It having been alleged that the mortgage was in fraud of creditors, the burden in the first instance is upon the plaintiff to show that the execution and delivery of this mortgage was attended by highly suspicious circumstances, and that the course of dealings between the parties to the mortgage was unusual and were not such as to be expected in bona fide transactions between ordinary businessmen, and that it is quite likely that the mortgage was executed for the fraudulent purposes of

hindering and delaying creditors. This is particularly true where the dealing is between close kin and the relationship as close as the defendant, Audria Hart, testifies, and when such circumstances are shown the burden of proof is then upon the defendants to prove the transaction was based upon a valid consideration, and they must prove the bona fides of the entire transaction.

In the case of Wilks v. Vaughan, 73 Ark. 174, 179, 83 S.W. 913, 914, the Supreme Court of Arkansas, had before it a case in point. There it is said:

"The conveyances were all made after the debt was incurred to the bank, and only a short time before judgment thereon, some a few days, and the farthest less than three months. Wilks was practically denuded of all his property after they were made. Were they fraudulent as to the bank, and, through it, to these appellees? It must be said in fairness to Wilks that plausible, and in some instances almost convincing, explanations of these transfers are made. It is thoroughly settled in equity jurisprudence that conveyances made to members of the household and near relatives of an embarrassed debtor are looked upon with suspicion and scrutinized with care, and when they are voluntary they are prima facie fraudulent, and, when the embarrassment of the debtor proceeds to financial wreck, they are presumed conclusively to be fraudulent as to existing creditors." Citing cases.

A case in point in the Arkansas Reports, is that of Crill v. Trites, 186 Ark. 354, 358, 53 S.W.2d 577, 578. Here the Supreme Court said:

"The questions here are, Was Trites insolvent at the time the deed was made? and Was it made with a fraudulent intent? A voluntary transfer of property to near relatives is presumptively fraudulent as to existing creditors, and, if the debtor is insolvent at the time, it necessarily hinders, delays, and defrauds his existing creditors, and such conveyances to near relatives

by a debtor who at the time is embarrassed, are looked upon with suspicion and scrutinized with care. Fluke v. Sharum, 118 Ark. 229, 176 S.W. 684; Wilks v. Vaughan, 73 Ark. 174, 83 S. W. 913; Mente & Co., Inc., v. Westbrook, 181 Ark. 96, 24 S.W.2d 976.

"The law as to fraudulent conveyances is well settled by the decisions of this court. It would serve no purpose to review all the decisions here. All of our decisions are to the effect that courts should carefully scrutinize all cases of alleged fraud against creditors where transfers have been made to members of the debtor's family. A gift of property to one's child by one indebted at the time is presumptively fraudulent as to existing creditors and, when it is shown that a gift of property was made by the father to child, that the father was largely indebted at the time, the burden of proof is on the father to show that his intentions were innocent and that he had at the time ample means to pay all his debts. On the other hand, however, if the evidence shows that one had ample means to pay all his debts, the conveyance to his child of property of small value together with other facts tending to show good faith, would be sufficient to justify the conclusion that the transfer was not fraudulent. Mente & Co., Inc., v. Westbrook, supra."

Plaintiff has cited and quoted from the case of Koenig v. Oswald, 8 Cir., 82 F.2d 85, 88, Judge Woodrough speaking for the court, was passing upon a case of alleged fraudulent conveyance, where the applicable statute was that of Missouri. He noted that under the Missouri law it was settled that an insolvent debtor has the right to prefer one of his creditors, though such payment exhausts his resources and leaves him without means to pay the others. The Court then said:

"A father may give a valid preference to a son, * * * but the relationship of the parties to a transfer which defeats the just claims of other creditors is a circumstance to be con-

sidered and given due weight in determining the good faith of the transaction. Such a transaction must be closely scrutinized by the court, where fraud is charged by defeated creditors. * * * *There must be clear and satisfactory proof that there was a valid and subsisting debt.* If any part of the debt relied on as consideration for the transfer is fraudulent or fictitious, it will taint the whole transaction and avoid the sale in favor of the creditors."

In the case of Martin v. Manning, Emerson & Morris, 124 Ark. 74, 186 S.W. 302, the court had before it a case of alleged fraudulent conveyance to defeat creditors in the collection of their debt. The court cited with approval and quoted from the case of Simon v. Reynolds-Davis Grocery Co., 108 Ark. 164–169, 156 S.W. 1015; "While the burden of proof is upon the plaintiff who alleges fraud to show it, yet that burden has been discharged where, as in this case, he shows that an embarrassed debtor, pending a suit against him by his creditors, has made conveyance of all the land he owned * * * to his sons for a consideration which upon the face of the conveyance appears to be a grossly inadequate one. Such circumstances are sufficient to raise a suspicion of fraud and to cast a doubt upon the legality of the transaction, *and the burden is then on the one holding under the deed to show a consideration.*" [124 Ark. 74, 186 S.W. 308.]

The mortgage and pledge here are to a member of the family, a sister; the debtors are left insolvent and they were insolvent when the mortgage and pledge were executed and delivered, if they were; the circumstances by which it is claimed Elizabeth F. Shoemaker and the corporate defendants became indebted to Audria Hart are very unusual, at no point were their alleged transaction or methods of doing business in keeping with the usual and ordinary, good business practices. The very fact that these large sums of money are claimed to have been kept in lock boxes, and particularly where it is alleged that both sisters had free access to the lock boxes and the money therein, that no record was ever made of withdrawals or the deposit of these moneys in the lock boxes, or the making of the loans, casts a doubt on the good faith of all of the alleged transactions to which Audria Hart has testified occurred between the sisters. If people choose to conduct their business affairs in such a suspicious manner, especially where the final result is financial wreckage, then they must accept the burden of proving the bona fides of their conduct and free themselves from the charge of committing fraud on their creditors.

In this case in order to sustain the bona fides of this mortgage and this pledge, the testimony of Audria Hart must be relied on, and it appearing to the court that under that evidence it clearly appears that some part of the alleged debt for which this mortgage and pledge was given was fraudulent, the whole transaction is tainted and the mortgage and pledge void.

### Conclusions of Law

The Court concludes the law to be:

1. The Court has jurisdiction of the parties and the subject matter of this action.

2. The plaintiff having alleged fraud in the execution of the chattel mortgage from Elizabeth F. Shoemaker and the two corporate defendants, to her sister Audria Hart, and the delivery to Mrs. Hart of the stock certificates, and having produced in this Court sufficient evidence to make a prima facie showing and case that such execution and delivery was a fraud, the burden of proof was upon the defendants to show that this conveyance and delivery of stock certificates was supported by a valid, present and adequate consideration, and that it was not made for the purpose of defeating or defrauding existing creditors.

3. That if any part of the alleged consideration for the execution of the mortgage and the delivery of the stock is found to be fraudulent, this taint extends to the whole consideration and voids the entire transaction.

4. Title 26 U.S.C. § 3672, which provides that the lien for taxes shall not

be valid as against any mortgagee, pledgee, purchaser or adjustment creditor until notice thereof has been filed by the Collector, upon which the defendant, Audria Hart, relies to give her lien priority over the lien of the government, does not apply under the facts in this case, because to be protected under that statute such mortgage or pledge must be bona fide and not a fraud on creditors, as the Court holds here.

5. The Court having found that the execution of the mortgage by the defendants, Elizabeth F. Shoemaker, Yellow Cab Company, Inc., and Checker Cab & Baggage Company, and the delivery of the stock certificates to Audria Hart were a fraud against existing creditors, and that the United States of America was a creditor at that time, and the United States of America is entitled to judgment:

(a) To set aside the chattel mortgage and pledge of stock as a fraud against it as an existing creditor.

(b) To have the preliminary injunction against the sale of the assets in the hands of the Receiver of the Pulaski Chancery Court made permanent.

(c) And to have all such other relief to which the plaintiff may show itself entitled in a court of equity.

(d) And to have a judgment for all its costs herein expended.

Counsel for plaintiff will prepare and present forthwith a decree in keeping with these findings of fact, memorandum and conclusions of law and present to the court for entry.