Harold G. HEMINGWAY *v.* Arthur L. GLASPER,
CHICAGO TITLE INSURANCE COMPANY and
LITTLE ROCK ABSTRACT COMPANY

86-175                                             722 S.W.2d 866

Supreme Court of Arkansas
Opinion delivered February 2, 1987
[Rehearing denied March 2, 1987.]

*Pope, Shambaurger, Buffalo & Ross,* by: *John K. Shamburger* and *Robert D. Ross,* for appellant.

*Hal Joseph Kemp, P.A.,* for appellees.

TOM GLAZE, Justice. Appellant appeals the trial court's order staying a writ of execution he caused to be issued against Randall and Brenda Snow and appellee Arthur Glasper. For reversal, he contends appellee Chicago Title Insurance Company (Chicago Title)—the company that posted bond to stay the proceedings below—is unconditionally liable, under the terms of its bond, to appellant. Alternatively, he argues the court's decision to stay the proceedings below is contrary to law. We reject appellant's arguments and affirm.

This appeal evolves from appellant's suit, filed on June 21, 1985, against the Snows, seeking judgment on two promissory notes. One note evidenced appellant's personal loan of $5,000.00 to the Snows. The second one was executed for a loan of $19,000.00 from Union National Bank to the Snows. Appellant alleged he was induced to cosign the bank note for the Snows' promise that they would execute a second mortgage to appellant on certain property they owned. That property subsequently became the object of the writ of execution appellant initiated in this cause after he obtained a default judgment against the Snows. After appellant caused the writ to be issued, appellee Glasper petitioned the court to stay the writ because Glasper had acquired title to the property from the Snows. The court granted Glasper's request, which appellant seeks to reverse in this appeal.

First, we consider appellant's argument that Chicago Title is liable to appellant under its bond which Chicago Title—at Glasper's behest—put up to stay the execution. Appellant's argument on this point is somewhat involved but, in sum, he claims Chicago Title and its agent, Little Rock Abstract, had liability exposure on title policies issued on the Glasper-Snow sale transaction because Little Rock Abstract had overlooked appellant's default judgment which had attached as a lien to the Snows' property prior to its conveyance by the Snows to Glasper. Appellant then argues Chicago Title, being aware of its liability exposure, sought to avoid future litigation by filing an *unconditional* bond in order to stay the execution sale of the Snows' property. Appellant urges Chicago Title became absolutely liable under that bond for the Snows' indebtedness, and the trial court should have granted judgment against Chicago Title. We cannot agree.

Appellant's argument rests in large part upon the language contained in the bond. We find nothing in the record which otherwise supports the idea that Chicago Title had any intention to unilaterally assume the Snows' indebtedness or, indeed, that it had filed the bond in this proceeding to avoid future litigation. To the contrary, Glasper is the person who petitioned the trial court to stay the appellant's default judgment against the Snows. In his petition, Glasper stated that he was acting pursuant to Ark. Stat. Ann. § 30-311 (Repl. 1979), and that he had purchased a surety bond, conditioned that if his petition be denied, the default judgment, with costs, would be paid. On the same date he filed his petition, he caused a bond to be filed, captioned "Bond to Stay Judgment and Execution Thereof", naming Chicago Title as principal, and American States Insurance Company as surety. While we recognize appellant argues otherwise, Glasper was a person who could, and did, properly petition the trial court, pursuant to § 30-311, to stay the proceedings below.

██ Appellant argues that, regardless of who filed the bond or for what purpose, the bond still fails to mention that payment under the bond was in any way conditional. Therefore, Chicago Title assumed liability even if Glasper prevailed on his petition. Such a contention is contrary to law. While appellant contends otherwise, the bond filed in this cause is unquestionably a statutory one, and our court, in *New Amsterdam Casualty Co.* v. *Detroit Fidelity & Surety Company*, 187 Ark. 97, 100, 58 S.W.2d 418, 419 (1933), stated the applicable rule as follows:

> The bond sued on is a statutory bond, and such bonds, executed in the form prescribed by the statute, are to be construed, as respects the rights of both principal and surety, as though the law requiring and regulating them were written in them.

As previously stated, Glasper petitioned for a stay under § 30-311, and that statute provides that, if such application be determined against such petitioner, he will pay the debt, damages and costs to be recovered by such execution. Thus, while the bond filed by Chicago Title failed to specify a condition, the bond must be read to include the one contained in § 30-311. Here, the trial court resolved the matter in favor of Glasper and the Snows. Thus, if the court was correct in so holding—which we consider in

appellant's next argument—Glasper or Chicago Title Company clearly would not be liable on the bond.

We now decide whether the trial court was correct in holding Glasper's interest in the Snow's property is superior to appellant's default judgment.

We agree with the trial court that *Pulaski Federal Savings & Loan* v. *Carrigan*, 243 Ark. 317, 419 S.W.2d 813 (1967) controls the situation presented here. There, a Mr. Stillman owned a lot which, on December 9, 1965, he contracted to sell to Mr. and Mrs. T. H. Hale. On March 23, 1966, Pulaski Federal obtained a personal judgment against Stillman, and after Pulaski Federal obtained partial satisfaction of its judgment, it later assigned its deficiency judgment to Southern Mortgage Insurance Corporation. Between the time Pulaski Federal obtained the personal judgment and its deficiency judgment, Stillman, on April 20, 1966, performed his earlier contract with the Hales by conveying his lot by warranty deed. The Hales later sold the land to the Carrigans, who sought injunctive relief against Pulaski Federal and Southern Mortgage when they levied execution on the subject lot. This court upheld the trial court's finding that Pulaski Federal's deficiency judgment did not constitute a lien against the lot. Quoting from *Snow Brothers Hardware Company* v. *Ellis*, 180 Ark. 238, 21 S.W.2d 162 (1929), the *Carrigan* court held that "a judgment lien attaches only to the judgment debtor's interest in the land and if that interest be subject to any infirmity or condition by reason of which it is eliminated or ceases to exist, the lien attached thereto ceases with it. . . ." A judgment lien is subject to existing equities of third parties in the land. After citing the rule in *Ellis*, the court concluded that more than three months before Pulaski Federal had obtained its judgment against Stillman, Stillman had bound himself to sell his lot to the Hales. The court, stating there was no contention that the earlier Stillman-Hale contract was anything other than a good-faith transaction, held Pulaski Federal's judgment lien was subject to that contract and was defeated when Stillman conveyed the lot to the Hales.

From our examination of the record, we find no meaningful distinction between the facts here and the ones in *Carrigan*. Appellant, through his partner, Roy Drew, offered to purchase

the Snows' property for $52,000. Drew testified that the offer, in part, was an effort to resolve a portion of the Snows' indebtedness to appellant. The Snows rejected Drew's offer in March 1985, and, instead, later executed an agreement on May 2, 1985, to sell the property to Glasper for the sum of $57,500. As previously mentioned, it was not until June 21, 1985, that appellant filed suit against the Snows on their indebtedness to him, and he did not obtain a default judgment until July 18, 1985. As was the situation with the judgment creditor (Pulaski Federal) in *Carrigan*, appellant's judgment lien here was subject to the Snows' May 2nd contract with Glasper, and that lien ceased to exist when the Snows conveyed title to Glasper.

Appellant attempts to distinguish *Carrigan* from the situation here, arguing the Snow-Glasper agreement was not a good-faith transaction. He points to the trial court's amended order, requested by appellant, which curiously reflects the court's finding that "Glasper was guilty of no fraud even though the Snows defrauded [appellant]." We have thoroughly studied the record and listened to remarks by both counsel in oral argument, but we fail to find any evidence to support fraud of any kind. As we noted earlier, appellant, in his original action against the Snows, did allege the Snows fraudulently induced him to cosign a note to Union National Bank by promising him a second mortgage on "certain property." He re-adopted the fraud allegation in his response to Glasper's petition in this stay proceeding, claiming further that any conveyance by the Snows was a "fraud on creditors," *viz*, appellant. Although appellant recited these fraud allegations, he offered no evidence to support them. Appellant did not testify and Drew, appellant's only witness, merely recounted his unsuccessful efforts to purchase the Snows' property. Drew made no mention of fraud or misrepresentation attributable to the Snows during his negotiations with them.

Even if the record supported fraud on the Snows' part, it is settled law that Glasper, as vendee, must have participated in any fraud by the Snows before the appellant, as creditor, is entitled to set aside a conveyance as fraudulent. *See Mente & Company, Inc.* v. *Westbrook*, 181 Ark. 96, 102, 24 S.W.2d 976 (1930). The trial court found Glasper committed no fraud, nor does anyone contend otherwise. Unquestionably, Glasper entered into the transaction with the Snows in good faith, and based on

the record before us, appellant is in no position to set that conveyance aside. We believe the *Carrigan* decision is controlling, and, accordingly, we affirm.